**In re: Andrea Lynn SANCHEZ, Debtor.**

**No. HK 05–20517.**

United States Bankruptcy Court, W.D. Michigan.

Jan. 31, 2007.

Thomas R. Betker, Esq., St. Joseph, MI, for Debtor.

Marcia R. Meoli, Esq., Holland, MI, Chapter 7 Trustee.

## OPINION RE: TRUSTEE'S JUNE 1, 2006 MOTION FOR SUMMARY JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

The Chapter 7 Trustee, Marcia Meoli, has filed a motion for summary judgment in connection with her objection to exemptions claimed by Debtor Andrea Sanchez. The motion is granted in part and denied in part for the reasons stated in this opinion.

## BACKGROUND

The pertinent facts are not disputed.[1] On October 16, 2005, Debtor filed a petition for relief under the Bankruptcy Code.[2] Debtor filed on that same day her statement of financial affairs and attendant schedules. Schedule B, paragraph 2, indicates that Debtor owned two bank accounts in addition to her checking account. One of these accounts is described as a "Medicare Set Aside Fund" with a balance of $8,336 (the "Medicare Set Aside account"). The other account is described as a "Money Market (Disability Pay)" [sic] with a balance of $73,000 (the "Disability Pay account").

Debtor also included both of these accounts in her Schedule C as property that Debtor intends to exempt from the bankruptcy estate for purposes of her fresh start.[3] Debtor claims as exempt the entire balance in each of the accounts (*i.e.*, $8,336 and $73,000). Debtor identified Section 522(d)(10)(C) as the statutory basis for her

---

1. The Chapter 7 Trustee's motion is supported by both a pre-hearing and a post-hearing brief. Attached to the pre-hearing brief is the August 30, 2005 redemption order that approved the lump sum settlement Debtor reached with respect to her workers' compensation claim. Debtor filed a post-hearing brief but not a pre-hearing brief. Debtor's brief includes additional exhibits related to the settlement of her claim. Neither party submitted affidavits in support of their respective positions.

2. 11 U.S.C. §§ 101, *et seq.* Debtor's petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(B)(1), 119 Stat. 23.

However, the sections of the Bankruptcy Code cited in this opinion were not affected by those amendments except for perhaps a few changes in the enumeration. Therefore, unless otherwise indicated, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as written after the BAPCPA amendments. In addition, all references to "Section _____" will be to the relevant sections of the Bankruptcy Code unless otherwise indicated.

3. Exempt property never became property of the estate under the former Bankruptcy Act. *See, generally,* 5 *Collier on Bankruptcy,* ¶ 541.-HH[1]-[3] (15th Ed. rev.2005). Therefore, prior to the enactment of the Bankruptcy Code, the debtor was free to immediately ex-

claimed exemption of the $8,336 in the Medicare Set Aside account and she identified Section 522(d)(11)(E) as the statutory basis for her claimed exemption of the $73,000 in the Disability Pay account.[4] Debtor also identified Section 522(d)(11)(E) as a second basis for exempting the Medicare Set Aside account.[5]

The money in both of these accounts is attributable to a settlement reached between Debtor, her employer, Walgreens, and Walgreens' insurance carrier. Debtor had allegedly injured her back while at work on October 24, 2000, almost five years before the settlement was reached. However, there is nothing in the record to suggest that Debtor had received any benefits under Michigan's worker's compensation laws during the interval between the alleged injury and the date of the settlement. Moreover, the settlement describes the dispute to involve the question of whether Debtor "suffers from any accidental personal injury or occupational disease or disability." The settlement also references a pending hearing scheduled before the worker's compensation magistrate to resolve that dispute. Consequently, it is fair to infer that while Debtor may have suffered the alleged injury many years ago, the symptoms warranting a worker's compensation claim did not in fact manifest themselves until some time in 2005 and that the settlement then made was reached while Debtor's claim for worker's compensation benefits was still pending.

ploit whatever exemption the law permitted him notwithstanding the commencement of the bankruptcy proceeding and the attendant creation of the bankruptcy estate. However, the Bankruptcy Code no longer excludes from the bankruptcy estate property that is subject to exemption. Rather, all property, including property that the debtor intends to exempt, becomes property of the bankruptcy estate upon the commencement of the bankruptcy case. *Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611, 613 (6th Cir.2000) (citations omitted). *See also, Liberty State Bank v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir.1985). The property that the debtor intends to retain for his "fresh start" is then exempted from the bankruptcy estate through the debtor's submission of Schedule C to his statement of financial affairs. FED. R.BANKR.P. 4003(a). The trustee and other parties of interest may object to an exemption claimed. FED.R.BANKR.P. 4003(b). However, *if a timely objection is not made*, then the property claimed as exempt is automatically returned to the debtor by operation of Section 522(*l*). *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992). Moreover, the exempted property, once removed from the bankruptcy estate, continues to be shielded for the most part from the claims of the debtor's pre-petition creditors by operation of Section 522(c).

4. Section 522 permits a debtor in all cases to claim what are commonly known as the "state" exemptions. 11 U.S.C. § 522(b)(3). A debtor may also elect as an alternative the so-called "federal" exemptions described in Section 522(d) so long as the applicable state has not opted out of this federal exemption scheme. Michigan is one of the states that permits its residents to choose between the state and federal exemptions recognized under Section 522 and in this instance Debtor has chosen the federal exemptions.

5. This second exemption for her Medicare Set Aside account is somewhat confusing because Debtor valued her Section 522(d)(11)(E) exemption at $0 whereas she valued her Section 522(d)(10)(C) exemption in the same account at $8,336. It would appear that what Debtor intends is to exempt as much of the Medicare Set Aside account as is possible under Section 522(d)(10)(C) and then exempt whatever remains, if anything, under Section 522(d)(11)(E). Of course, it is possible that the Chapter 7 Trustee does not agree with this interpretation. However, the issue is presented to me in the context of Trustee's motion for summary judgment and therefore I am constrained to make all inferences in favor of Debtor, who is the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also, Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir.2006).

The agreement provided for the worker's compensation defendants to pay Debtor a lump sum of $115,000 in settlement of whatever liability the defendants might have for Debtor's injury under Michigan's worker's compensation laws. Debtor also agreed to release the workers' compensation defendants from all other claims that might have arisen as the result of her employment.

The worker's compensation magistrate approved the settlement on August 30, 2005 [6] and it appears that the worker's compensation defendants paid the settlement amount within a short time thereafter. $13,602.46 of the amount received went to Debtor's attorney, another $100 went to the State of Michigan as a fee, and $8,362 was deposited in the Medicare Set Aside account.[7] It further appears that the remainder of the settlement, that being $92,935.54, was deposited in the Disability Pay account but that Debtor had expended $19,935.54 of this amount during the month or so between Debtor's receipt of her share of the settlement and the October 16, 2005 filing of her bankruptcy petition.[8]

The addendum to the magistrate's August 30, 2005 redemption order approving the settlement indicates that the lump sum amount Debtor received in her settlement addressed both Debtor's "lost wage-earning capacity over the balance of her/her continued lifetime" and "related future medical benefits." It then stated that 100% of Debtor's net recovery represented "a loss of wage-earning capacity of $294.07 per month for the remainder of her projected life." I infer from these statements that the portion of the lump sum amount deposited in the Medicare Set Aside account is the portion of the settlement amount associated with the "related future medical benefits" and that the remaining net amount of $92,935.54 deposited in the Disability Pay account is the portion of the settlement associated with Debtor's "lost wage-earning capacity."

The Chapter 7 Trustee filed a timely objection to Debtor's claimed exemption of both the Medicare Set Aside account and the Disability Pay account.[9] The court is currently administering that objection as a contested matter, FED.R.BANKR.P. 9014, and the Chapter 7 Trustee has filed her motion for summary judgment in conjunction with the contested proceeding. FED.R.BANKR.P. 7056 and 9014(c).

I heard the Chapter 7 Trustee's motion on July 6, 2006. The parties, at my request, then filed post-hearing briefs.

## DISCUSSION

Trustee's motion is based upon this court's prior decision in *In re Williams,*

6. An injured employee is entitled to receive weekly benefits under Michigan's worker's compensation system. MICH. COMP. LAWS §§ 418.301, 418.311 and 418.801. However, the statutory liability arising from the work-related injury can also be settled or "redeemed" for a lump sum amount if all parties agree and the agreement is then approved by a state-appointed magistrate. MICH. COMP. LAWS §§ 418.835–837.

7. Worker's compensation settlements often include a set aside for future Medicare reimbursement claims. The purpose of the set aside is to ensure that the Medicare program, and ultimately the taxpayer, will have recourse in the event medical expenses are later incurred which are nonetheless attributable to the work-related injury.

8. The record does not provide any accounting for the $19,935.54.

9. FED.R.BANKR.P. 4003(b) requires a trustee or other party in interest to file an objection to the debtor's claimed exemption within 30 days of the conclusion of the first meeting of creditors. In this instance, the Chapter 7 Trustee filed her objection on December 9, 2005, which was 11 days after the November 28, 2005 first meeting of creditors.

181 B.R. 298 (Bankr.W.D.Mich.1995). The facts in that case are in many respects identical to the facts in the instant case. James Williams had been injured during his employment and it appears that Mr. Williams, like the debtor here, had opted to settle his worker's compensation claim for a lump sum amount of $64,900.00.[10] However, unlike the instant case, several years had passed between Mr. Williams' receipt of the settlement and the commencement of his case. Consequently, Mr. Williams had spent nearly three quarters of his settlement before he had filed his petition for relief. However, Mr. Williams was able to trace some of his expenditures to a 1991 Ford Explorer and various items of recreational equipment. Mr. Williams also asserted that the $17,963.64 he identified as being in his bank accounts was all traceable to the lump sum settlement.

Mr. Williams claimed the bank accounts, the Ford Explorer, and the recreational equipment as exempt pursuant to Section 522(d)(11)(D).

(d) The following property may be exempted under subsection (b)(2) of this section:

\* \* \* \* \* \*

(11) The debtor's right to receive, or property that is traceable to—

\* \* \* \* \* \*

(D) a payment, not to exceed $18,450, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

11 U.S.C. § 522(d)(11)(D).

The bankruptcy trustee in *Williams* objected to the exemption on the theory that worker's compensation awards are exemptible only under Section 522(d)(10)(C).

(d) The following property may be exempted under subsection (b)(2) of this section:

\* \* \* \* \* \*

(10) The debtor's right to receive—

\* \* \* \* \* \*

(C) a disability, illness, or unemployment benefit;

11 U.S.C. § 522(d)(10)(C).

The court in *Williams* agreed with the bankruptcy trustee. *Id.* at 301–2. The court also preempted Mr. Williams' anticipated attempt to amend his Schedule C to then claim the accounts, the Explorer, and the recreational equipment as exempt un-

10. The court in *Williams* describes without elaboration the lump sum payment received by Mr. Williams as a "worker's compensation award." *Id.* at 299. However, benefits awarded under Michigan's worker's compensation laws are typically paid in weekly installments over some specified period of time. Mich. Comp. Laws § 418.801. Indeed, even compensation awarded in conjunction with the loss of a finger or other body part is to be paid through a weekly benefit. Mich.Comp. Laws § 418.361. While a worker's compensation magistrate does have the authority to combine the weekly compensation typically awarded into one or more lump sum payments, the magistrate may do so only when special circumstances have been found.

On the other hand, the parties may settle or "redeem" the employer/insurance service's liability under the worker's compensation laws in exchange for a lump sum payment to the claimant. Mich.Comp.Laws § 418.835. All such settlements, however, are subject to approval by a worker's compensation magistrate. Mich. Comp. Laws §§ 418.835 and 418.837.

It is likely that the lump sum Mr. Williams received represented a settlement between the parties and that the "award" alluded to by the *Williams* court was in fact only the magistrate's mandatory approval of the settlement reached.

der Section 522(d)(10)(C). It concluded that these items represented proceeds of a worker's compensation award that had been received well before the commencement of Mr. Williams's bankruptcy case. Therefore, these items fell outside the ambit of the Section 522(d)(10)(C) exemption. *Id.*

The Chapter 7 Trustee in this instance contends that the same reasoning should be applied with respect to the two accounts Debtor has claimed as exempt. That is, the Chapter 7 Trustee asserts that: (1) Debtor's claimed Section 522(d)(11)(E) exemption of the Medicare Set Aside account and the Disability Pay account should be disallowed because workers' compensation recoveries are covered by only the Section 522(d)(10)(C) exemption; and (2) Debtor's claimed Section 522(d)(10)(C) exemption of the Medicare Set Aside account should also be disallowed because the pre-petition settlement she received represents proceeds of her disability claim and therefore the money derived from that settlement is outside the scope of the Section 522(d)(10)(C) exemption.[11]

█ However, I am reluctant to adopt *Williams* without question. *Williams* itself rejected a different interpretation of Sections 522(d)(10)(C) and 522(d)(11) given by this court fourteen years earlier. *In re Lambert*, 9 B.R. 799 (Bankr.W.D.Mich. 1981). Consequently, the Chapter 7 Trustee's characterization of *Williams* as controlling law is not accurate. It is true that two respected jurists in this district reached different conclusions regarding the issue at hand. However, *Williams* did not overrule *Lambert*. Nor am I bound to follow *Williams*, or for that matter, *Lambert*.

A court is not irretrievably bound by its own precedents, but in the interests of uniformity, stability, and certainty in the law, will follow the rule of law established in earlier cases unless clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent. 1B Moore's Federal Practice P 0.402(3.–1) (1965 & Supp. 1980–81). *Mueller v. Allen*, 514 F.Supp. 998–99, 1000–001 (D.Minn.1981); *see also, Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3rd Cir.1991); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir.1987).

The application of *Williams* in this instance seems unfair. Granted, Section 522(d)(10)(C) offers a debtor the ability to exempt without restriction all that is to be received as worker's compensation benefits whereas Section 522(d)(11)(E), for example, limits the exemption to only the amount necessary to support the debtor and his dependents. However, in this instance, Debtor stands to exempt nothing at all under Section 522(d)(10)(C) if *Williams* is applied. In other words, *Williams* would have allowed Debtor to exempt without limit whatever weekly benefits she might have been awarded under Michigan's worker's compensation laws had she elected to pursue her claim before the magistrate instead. However, *Williams* will not allow Debtor to now exempt even a portion of the settlement she received only a month before she filed her petition even though Debtor is suffering from a disabling injury just the same. Consequently, it is appropriate to consider again the interplay between Section 522(d)(11)

11. The Chapter 7 Trustee has not made a similar objection to the Disability Pay account only because Debtor has not sought a similar Section 522(d)(10)(C) exemption of that account.

and Section 522(d)(10)(C) in order to determine whether the seemingly harsh result mandated by *Williams* is in fact warranted.

The court in *Williams* relied in large part upon two prior cases, *In re LaBelle*, 18 B.R. 169 (Bankr.D.Me.1982) and *Casarow v. Evans (In re Evans)*, 29 B.R. 336 (Bankr.D.N.J.1983), as authority for the conclusions it reached. It is ironic, then, that in each of these two cases it was the debtor, not the trustee, who was contending that the worker's compensation award was exemptible under Section 522(d)(10)(C).[12] For example, in *LaBelle*, the debtor, who was totally disabled, had been receiving weekly payments on account of a worker's compensation award at the time of his bankruptcy petition. Mr. LaBelle also expected to receive a lump sum settlement of his worker's compensation settlement shortly thereafter. Mr. LaBelle contended that whatever he was to receive post-petition on account of his disability, including the lump sum payment, was exempt because it fell within the scope of Section 522(d)(10)(C). However, the trustee objected, asserting instead that worker's compensation awards fell within the scope of Section 522(d)(11) and that, therefore, whatever the debtor could exempt was limited to only the portion of the award reasonably necessary to support the debtor and his dependents. 11 U.S.C. § 522(d)(11)(E).

The court in *LaBelle* rejected the trustee's interpretation of these exemption provisions as unreasonable. It distinguished worker's compensation benefits from general tort recoveries. Tort recoveries, the *LaBelle* court observed, are intended to restore the claimant for the loss he or she has suffered. Worker's compensation benefits, though, are designed simply to sustain the injured worker. Such benefits represent "a sum which, added to his remaining earning ability, if any, will presumably enable him to exist without being a burden to others." *LaBelle*, at 170 (quoting I Larson's *Workmen's Compensation Law*, Section 2.50).[13]

As such, the court in *LaBelle* could not believe that Congress intended to subject the payments a debtor was to receive in

---

**12.** Indeed, the courts in *LaBelle* and *Evans* both found in favor of the debtor by permitting all of the subject benefits to be exempted under the broader provisions of Section 522(d)(10)(C).

**13.** The Supreme Court's recent decision in *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, —— U.S. ——, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006), is one of the reasons why I asked both parties to submit post-hearing briefs. The Court did have the opportunity in that case to compare workers' compensation systems with common law tort liability. It observed that such systems served as a modification or substitute for such liability. Employees gained from such legislation because workers' compensation laws eliminate fault from consideration of whether a work-related injury is compensable. However, employers also gained because workers' compensation laws preclude the injured worker from seeking the full panoply of damages that could be awarded under general theories of tort. 126 S.Ct. at 2113–14.

Frankly, *Howard Delivery*'s observations lend support to both sides of the issue before me. There is no question that the Supreme Court agrees that benefits received on account of worker's compensation are different from damages awarded in connection with a tort claim. However, it is equally clear that the difference is not as profound as some courts would have it. Both types of awards serve the same fundamental purpose: to compensate a party for an injury suffered at the hands of another.

In any event, the issue in *Howard Delivery* was whether premiums due an insurance carrier should be offered priority under Section 507(a)(5). Therefore, while the Court's observations are interesting, *Howard Delivery* ultimately offers little guidance with respect to the resolution of the issue at hand.

connection with a workers' compensation claim to the limitation imposed by Section 522(d)(11)(E).

Workers' compensation is not "compensation for losses" as third party tort actions are. Workers' compensation benefits are "akin to future earnings of the debtor" whose ability to generate future earnings has been reduced or, as in this case, completely lost because of a work related injury. See *In re Thompson*, 4 B.R. 18 (Bkrtcy.D.Me.1979). The benefits are intended to substitute for those lost earnings, and as Professor Larson in his treatise so aptly stated: "the amount of compensation awarded may be expected to go not much higher than is necessary to keep the worker from destitution." I Larson's Workmen's Compensation Law, Section 2.50.

*Id.* at 171.

*LaBelle* suggested instead a different approach.

A more reasonable interpretation is indicated by the brief legislative history. Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor; paragraph (11) allows the debtor to exempt certain compensation for losses. To put it another way, paragraphs (11)(D) & (E) deal with recoveries for losses, which, in some instances, could amount to hundreds of thousands of dollars and greatly exceed an amount reasonably necessary for the support of the debtor and his dependents; paragraph (10)(C) exempts certain benefits that are strictly "akin to future earnings of the debtor." The latter clearly encompasses workers' compensation benefits. Limitation of benefits are incorporated in the Workers' Compensation Act.

*Id.* at 170.

*Evans* followed *LaBelle* the next year. As in *LaBelle*, the debtor in *Evans* had a pending worker's compensation claim at the time he filed his bankruptcy petition. That claim then was liquidated into a $29,970 award for "partial permanent disability" to be paid over a period of 270 weeks. Mr. Evans claimed the award as exempt under Section 522(d)(10)(C). However, the trustee in *Evans*, like the trustee in *LaBelle*, contended that the award could only be exempted under Section 522(d)(11)(D) or (E) and, therefore, the exemption was subject to the limitations imposed by that section.

*Evans* agreed with the debtor that the award was a "disability benefit" within the meaning of Section 522(d)(10)(C). Moreover, it agreed with *LaBelle's* characterization of the Section 522(d)(11) exemption as relating to "tort compensation." Indeed, *Evans* expanded upon this theme by concluding in effect that only tort-related awards were covered by Section 522(d)(11). Consequently, *Evans* reasoned that workers' compensation awards had to fall within Section 522(d)(10)(C) because they by definition did not arise out of tort.

The entire tenor of § 522(d)(11) relates to tort compensation, i.e. crime victim's reparation, life insurance payments, bodily injury and loss of future earnings. Payments for loss of future earnings do not occur solely in the context of worker's compensation. See N.J.S.A. 39:6A–4(b), where there is compulsory insurance for lost future income as a result of a disability from an automobile accident. Therefore, section 522(d)(11) is most reasonably interpreted as applying to general tort-related awards, and not worker's compensation awards. Worker's compensation was legislatively defined outside the area of general tort law. This distinction logically appears to have been continued by Congress in specifying exemptions under the Bankruptcy Code.

*Evans,* 29 B.R. at 339. *See also, In re Cain,* 91 B.R. 182 (Bankr.N.D.Ga.1988).

*Williams* adopted the reasoning in *Evans* to conclude that the debtor before it could not exempt his worker's compensation settlement under Section 522(d)(11).

> Based on this legislative history, the above cited courts determine that the exemptions under § 522(d)(11) only cover compensation received in the nature of tort liability. Workers' compensation benefits, on the other hand, fall under § 522(d)(10)(C) as payment in lieu of future earnings of a debtor whose ability to generate future earnings has been reduced or lost because of a work-related injury. *LaBelle,* 18 B.R. at 171; *Evans,* 29 B.R. at 338–39; *Albrecht,* 89 B.R. at 861.
>
> \* \* \* \* \* \*
>
> Thus, the Debtors may not exempt their workers' compensation award under § 522(d)(11)(D).

*Williams,* 181 B.R. at 300–301 (footnote omitted).

Moreover, *Williams* took the reasoning in *Evans* to its logical conclusion, for the court in *Williams* also determined that the debtor could not exempt the settlement he had received under Section 522(d)(10)(C) either. *Williams* recognized that the debtor could have exempted without limit under Section 522(d)(10)(C) whatever weekly or monthly benefit he might have been awarded under the worker's compensation laws had he chosen not to settle his claim. However, *Williams* concluded that the debtor's acceptance of the settlement had transformed what would have been his exemptible benefit into merely property traceable to that benefit and, as *Williams* observed, the exemption permitted under Section 522(d)(10) extended only to the benefit itself.

The Debtors did not claim such an exemption on their schedules and a determination on this issue was not necessary to the court's decision. Nonetheless, the literal reading of the language of § 522(d)(10)(C) also precludes the debtors from exempting the proceeds of the award.

> \* \* \* \* \* \*
>
> It appears that Congress intended *not* to exempt traceable assets under § 522(d)(10) because it did not explicitly do so. The fact that such language is contained in § 522(d)(11) underscores that Congress knew how to include traceable assets in § 522(d)(10) had it desired to do so.

*Williams,* 181 B.R. at 301–302 (emphasis in original); *see also, In re Michael,* 262 B.R. 296, 299 (Bankr.M.D.Pa.2001).

As already discussed, *Williams* also relied upon *LaBelle* to reach this conclusion. However, it was the court in *LaBelle* which could not believe that Congress would impose any restriction on a debtor's ability to exempt worker's compensation benefits to which the debtor was entitled. Would not the court in *LaBelle* have found even more incredible an argument to the effect that Congress intended recipients of lump sum settlements under the worker's compensation laws to be denied any exemption whatsoever when, for example, recipients of lump sum tort awards could still exempt at least a portion of what they had received?

Of course, *Williams'* logic applies only if one first accepts *Evans'* premise that there is no overlap between the Section 522(d)(10) exemptions and the Section 522(d)(11) exemptions. In other words, the court in *Williams* would not have had to deny the debtors' claimed exemptions outright had it rejected *Evans* and concluded instead that Section 522(d)(11) also offered the debtor an opportunity to ex-

empt worker's compensation awards. Indeed, that is what this court had done 14 years earlier in *Lambert*.

> Keeping in mind that exemption laws are to be liberally construed in favor of the debtor, I would find that the worker's benefit granted debtor would be covered by both 11 U.S.C. Sec. 522(d)(10)(C) and 11 U.S.C. Sec. 522(d)(11)(E).

*Lambert,* 9 B.R. at 800.

Subsections (10) and (11) of the so-called federal exemptions permitted under Section 522(d) are unique in the sense that they are the only two subsections that describe the property exemptible thereunder as a "right to receive." In contrast, seven of the remaining ten subsections of Section 522(d) describe the exemptible property as an "interest" and the other three subsections describe specific types of property (*i.e.,* health aides, life insurance contracts, and retirement funds). Consequently, it is fair to infer that the "rights to receive" that are exemptible under subsections (10) and (11) share attributes that set them apart from property that would be exemptible under any of Section 522(d)'s other subsections.

■ What appears to be the common thread that runs through both subsections (d)(10) and (d)(11) is income support. That is, all of the "rights to receive" referenced in these two subsections involve in some way or another supplemental income. For example, the right to receive social security benefits, alimony or a payment under a pension plan referenced under Section 522(d)(10) and the right to receive a payment in "compensation of loss of future earnings" referenced under Section 522(d)(11)(E) all relate to alternative sources of revenue upon which a debtor might rely to support himself and his family. Indeed, the notion of support is reinforced through the inclusion in both subsections of a reasonableness standard for the right to receive alimony and retirement benefits under subsection (d)(10) and the right to receive life insurance proceeds, wrongful death awards, and lost earnings payments under subsection (d)(11).[14]

■ What, then, distinguishes the supplemental income sources covered by subsection (d)(10) from the supplemental income sources covered by subsection (d)(11)? Frankly, were it not for the addition to Section 522(d)(11) of the "property that is traceable to" language, there would have been no need to have separate subsections (d)(10) and (d)(11). For example, assume that a debtor, at the time of his petition, holds a tort claim whereby he expects to receive a substantial award for lost future earnings. Why would Congress have bothered to provide for the exemption of such a claim under a separate subsection when it could have simply added a subpart (F) to Section 522(d)(10)? Put differently, why did Congress limit the exemption of supplemental income sources like social security, unemployment, alimony and pension benefits to only the right to receive the payment under Section 522(d)(10) yet extend the exemption of other types of supplemental income sources such as payments on account of lost earnings under Section 522(d)(11) to not only the right to receive the payment itself but

---

**14.** Granted, the exemption of the right to receive a payment on account of a crime victim's reparation law under Section 522(d)(11)(A) and the right to receive a payment on account of dismemberment under Section 522(d)(11)(D) do not fit as neatly within this theme as the other rights covered by Section 522(d)(11). However, both still are compensatory in nature and are designed more often than not to serve as a substitute for an income stream that the victim is no longer able to rely upon.

also to property traceable to the payment if already received?

The answer lies in the different nature of the "rights to receive" covered by these two subsections. The benefits and other rights exempted under Section 522(d)(10) all represent payment streams that a debtor would expect to receive at regular intervals over some duration of time after his or her bankruptcy case had been commenced. In other words, all the benefits and other rights referenced in Section 522(d)(10) are "akin to future earnings" in the sense that they serve to supplement or replace the regular paycheck that a debtor might have otherwise continued to have received. Indeed, this is the distinction that the court in *LaBelle* discerned from the legislative history.

> [P]aragraphs (11)(D) & (E) deal with recoveries for losses, which, in some instances, could amount to hundreds of thousands of dollars and greatly exceed an amount reasonably necessary for the support of the debtor and his dependents; paragraph (10)(C) exempts certain benefits that are strictly "akin to future earnings of the debtor."

*LaBelle*, 18 B.R. at 170.

I had the opportunity in *In re Dale*, 252 B.R. 430 (Bankr.W.D.Mich.2000), to discuss Congress' intent when it grouped together under Section 522(d)(10) what at first blush would appear to be a melange of benefits and other payments.

> [C]ongress limited the exemption to a "right to receive a payment" under a retirement or similar plan and then grouped that exemption with four other categories of benefits. 11 U.S.C. § 522(d)(10)(A)-(D).

> \* \* \* \* \* \*

These first four subsections share a common theme: each enumerated benefit or right to payment is based upon a condition of the recipient typically associated with immediate need. For example, the elderly and disabled frequently rely upon social security and veterans benefits as their sole means of support. The unemployed depend upon unemployment compensation and the poor depend upon public assistance. A divorced spouse and his or her dependents require alimony or other support for their basic needs, especially if they have no other resources.

What I discern from these other four subsections is a Congressional design to ensure that unemployed or underemployed debtors who depend upon benefits and other payments for their livelihood are offered the same opportunity for a "fresh start" as debtors who are fully employed. Congress, when it enacted the Bankruptcy Code, excluded from the estate's property, all "earnings from service performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). The exclusion of an individual debtor's post-petition earnings is consistent with Congress' overall scheme of providing a debtor with a "fresh start." The exclusion makes quite clear that the debtor's post-petition earnings may not be attached by a bankruptcy trustee for the benefit of the debtor's creditors, but instead may be preserved for the sustenance of the debtor and his family.

However, the Section 541(a)(6) exclusion of post-petition earnings does not address a separate body of debtors who are equally entitled to a "fresh start"— debtors who sustain themselves from sources other than earnings. Included among such non-wage earning debtors are persons receiving social security, unemployment, and public assistance benefits. These benefits are not future wages but instead are quasi-assets. For example, a retired debtor receiving so-

cial security benefits at the time of her bankruptcy petition does not continue to "earn" those benefits post-petition. Her age has already established her eligibility. Similarly, a divorced spouse who is receiving alimony does not "earn" the post-petition support payments. Indeed, post-petition alimony payments arising under a pre-petition divorce judgment are more akin to payments on account of a pre-petition account receivable than to future earnings.

I believe that Congress intended Section 522(d)(10) to ensure that deserving debtors who are receiving non-wage benefits at the time they file for bankruptcy would receive the same treatment as debtors who are employed. What Congress recognized was that there would be debtors filing for bankruptcy relief who depended upon non-wage payment streams for their livelihood and that many of these debtors needed these benefits as much, if not more, than debtors who could continue to work. It is in this sense that the "benefits" enumerated in Section 522(d)(10) are "akin to future earnings of the debtor."

However, Congress did not exclude any and all non-wage payment streams to which the debtor might be entitled at the time of filing as it did for any and all earnings. 11 U.S.C. § 541(a)(6). Congress instead limited the exemption of these payment streams to situations where the recipient's circumstances were such that the benefits were needed for his support and the support of his dependents. In some instances, Congress simply assumed that the benefit would be necessary without further examination. For example, persons receiving public assistance presumably receive those benefits because they cannot earn enough money to otherwise support themselves or their dependents. Similarly, persons receiving social security or veterans benefits are mostly old or disabled and therefore not able to support themselves.

On the other hand, Congress was unwilling to make this assumption with respect to payments received on account of alimony or other marital maintenance obligations. Such payments are often the primary if not the only means for the bankrupt debtor to accomplish a post-petition "fresh start." However, alimony obligations can also be extravagant (witness the divorces of the superrich) or be supplemented by earnings if the bankrupt debtor also is employed. Consequently, Congress limited the exemption of alimony and other marital support payments to only the amount which would be necessary for the support of the debtor and the debtor's dependents.

*Dale*, 252 B.R. at 435–436 [15] (footnotes omitted).

█ Section 522(d)(10), then, is designed to include within its scope benefits and other income supplements that a debtor will regularly receive post-petition. It is unlikely that any particular payment received would be of a considerable amount. Indeed, in many instances, the nature of the benefit itself would limit the payment to only that which would be need-

15. In *Dale*, the Chapter 7 Trustee had objected to the exemption claimed by the debtors for their interest in individual retirement accounts (IRAs). I sustained that objection and denied the debtors' claim of exemption. On appeal, the district court affirmed. *Dale v. Puerner*, 264 B.R. 875 (W.D.Mich. Feb.13, 2001). The debtors then appealed to the Sixth Circuit which reversed and remanded the case in light of its intervening decision of *In re Brucher*, 243 F.3d 242 (6th Cir. March 8, 2001). *See, In re Dale*, 2002 WL 1869013 (6th Cir.2002).

ed to provide ongoing support to the debtor and his dependents (*e.g.*, disability and social security benefits, unemployment compensation). Consequently, one would expect that whatever a debtor might receive as a benefit or other right covered by Section 522(d)(10) would be consumed in a short period of time to meet his and his dependents' immediate needs.

In contrast, the "rights to receive" covered by the Section 522(d)(11) exception frequently involve "recoveries for losses which, in some instances, could amount to hundreds of thousands of dollars ...." *LaBelle,* 18 B.R. at 170. *LaBelle* made this observation to distinguish a debtor's right to receive periodic worker's compensation benefits from such large recoveries. Again, *LaBelle* considered such benefits as simply a means to sustain the injured worker so that he or she would not be a burden on others. Consequently, *LaBelle* concluded that the periodic payments to be received by a debtor under a worker's compensation system fit more squarely within the "supplemental paycheck" exemptions allowed under Section 522(d)(10) than within the more generic "loss" exemptions allowed under Section 522(d)(11).

However, *LaBelle* did not address the different problem presented to a debtor who, like a worker's compensation beneficiary, has suffered a reduction in his or her income stream but who, unlike the worker's compensation beneficiary, is compensated for that reduction through the payment of a single, lump sum amount. Some might argue that persons who have suffered injuries that impair their future ability to earn a livelihood should not be awarded large sums of immediately available cash as compensation for what they otherwise would have received over time as relatively small, periodic payments. However, the reality is that persons do receive large sums of money as the result

of litigation or as beneficiaries of life insurance contracts and the amounts received get deposited in bank accounts or are invested in the market. Moreover, the recipients do not restrict their use of the monies received to only groceries, utilities and rent. They also use what they have received to purchase homes, cars, or, like the debtor in *Williams,* recreational equipment.

It is this fact of life that prompted Congress to expand the Section 522(d)(11) exemption beyond the right to simply receive a payment to include as well proceeds traceable to what has been paid. In other words, Section 522(d)(11) recognizes that injured debtors who are to receive large sums as compensation for their loss should not be penalized simply because those sums have been deposited into bank accounts or converted into durable goods. Granted, many recipients of lump sum awards emulate the prodigal son. It is also true that a judgment awarded or an insurance benefit paid may on occasion exceed whatever the recipient will actually need to reasonably support himself and his dependents over his remaining lifetime. However, there are also instances where the debtor uses the award wisely: an annuity is acquired; the home mortgage is paid off; new transportation is purchased. What the "traceable proceeds" addition to Section 522(d)(11) recognizes is that a disabled debtor who makes an expenditure of this type from a lump sum award is no less in need of that asset than a disabled debtor who, for example, is able to continue making his monthly mortgage payments with future benefits that are exemptible under Section 522(d)(10).

██ Therefore, I do not agree with *Evans* and *Williams* that Sections 522(d)(10) and (d)(11) are mutually exclusive. Rather, I agree with *Lambert* that these two subsections comprise an overlapping net

designed to capture the broad array of benefits, awards and other rights of payments that supplement, if not replace altogether, what a debtor would otherwise earn in order to support himself and his dependents. In most instances, the "right to receive" would qualify only under subsection (d)(10) or subsection (d)(11). For example, the right to receive payments on account of a retirement plan fits only within the provisions of Section 522(d)(10)(E). Conversely, the right to receive a payment under a life insurance policy fits only within the provisions of Section 522(d)(11)(C). However, in some instances a right to receive a particular payment or benefit could qualify under both of these subsections just as, for example, books and musical instruments could qualify both under Section 522(d)(3) and (d)(6).

The right to receive payments under a worker's compensation claim is one of those instances where there is such an overlap. The courts that have treated worker's compensation payments as being exclusively under the purview of Section 522(d)(10)(C) ignore the limitations of that subsection, for Section 522(d)(10)(C) does not, as those courts would have it, encompass all of the possible resolutions that might derive from a worker's compensation claim. Rather, Section 522(d)(10)(C) focuses on only the circumstance under which the debtor is to actually receive a benefit under the worker's compensation system. Indeed, Michigan's worker's compensation laws recognize that lump sum settlements of a worker's compensation claim are distinct from the benefits that either may be awarded or already have been awarded on account of that claim.

After 6 months' time has elapsed from the date of a personal injury, any liability resulting from the personal injury may be redeemed by the payment of a lump sum by agreement of the parties, subject to the approval of a worker's compensation magistrate.

\* \* \* \* \* \*

MICH. COMP. LAWS § 418.835(1).

In other words, a settlement, like the one received by Debtor in the instant case, was in lieu of the benefits that Debtor could have received had she not settled. Indeed, it is best to characterize the settlement received by Debtor as proceeds of her worker's compensation claim itself as opposed to proceeds deriving from any benefit awarded since it appears that Debtor settled her claim before there was ever any determination as to whether she was even entitled to a weekly benefit under the worker's compensation laws.

Therefore, the better interpretation of Section 522(d)(10) and (d)(11) for purposes of worker's compensation is to view the claim itself as falling within the scope of Section 522(d)(11) but to then allow any right to receive a weekly benefit on account of that claim as also falling within the scope of Section 522(d)(10)(C). This interpretation allows for the exemption of at least some portion of a pre-petition settlement received on account of a worker's compensation claim under Section 522(d)(11)(E) while also allowing the debtor to exempt in their entirety whatever future weekly benefits will be paid as of the petition date in the event no settlement has been reached at that time.[16]

---

**16.** I do not, though, necessarily reject the ultimate outcome of *Williams,* for the debtor in *Williams* chose the Section (d)(11)(D) exemption.

(d) The following property may be exempted under subsection (b)(2) of this section:

 \* \* \* \* \* \*

(11) The debtor's right to receive, or property that is traceable to—

■ In the instant case, Debtor would have been able to take advantage of the unlimited Section 522(d)(10)(C) exemption had she been awarded pre-petition the weekly benefits contemplated under Michigan's worker's compensation laws. Likewise, Debtor would have been able to take the unlimited Section 522(d)(10)(C) exemption if her workers' compensation claim had not yet been awarded or settled at the time of her petition since a debtor's exemption rights are determined based upon the facts as they existed at the time of the petition. *In re Wickstrom*, 113 B.R. 339, 343–44 (Bankr.W.D.Mich.1990) (compiling cases).[17]

■ However, Debtor may not take advantage of Section 522(d)(10)(C) with respect to her workers' compensation claim because Debtor had elected pre-petition to accept a lump sum settlement from Walgreens and its insurance carrier in lieu of pursuing her claim under Michigan's worker's compensation laws. Nonetheless, Section 522(d)(11)(E) still offers her some re-lief, for that subsection clearly provides that a right to receive payment, or property that is traceable to that right, may be exempted: (a) if the payment is "in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependant;" but (b) only "to the extent reasonably necessary for the support of the debtor and any dependant of the debtor."

■ I recognize that *LaBelle* distinguished workers' compensation benefits from payments received as "compensation of loss of future earnings" under Section 522(d)(11)(E). *LaBelle*, and now the Chapter 7 Trustee, would prefer to label worker's compensation awards as "weekly wage loss benefits" or something similar. However, one must remember that *LaBelle* was making this distinction as justification for including worker's compensation benefits within the scope of Section 522(d)(10) because the trustee in that instance was insisting that only the Section

---

\* \* \* \* \* \*

(D) a payment, not to exceed $18,450, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

11 U.S.C. § 522(d)(11)(D).

Although ambiguous, it appears that Congress intended Section 522(d)(11)(D) to cover only those payments designed to directly compensate the victim for the injury incurred. For example, an award for the loss of a limb would be exemptible under Section 522(d)(11)(D) but related awards for pain and suffering or lost earnings associated with that loss would not. *See also*, H.R.Rep. No. 595, 9th Cong. 1st Sess. 362 (1977), *reprinted* in 1978 U.S.Code Cong. & Ad. News at 6318. If, as it would appear, Mr. Williams's worker's compensation settlement was based upon his lost earning capacity, then trustee's objection to his claimed exemption under Section 522(d)(10)(D) should have still been sustained. It would have then been up to Mr. Williams to decide whether he wished to amend his Schedule C to claim his settlement as exempt under Section 522(d)(11)(E) instead.

17. I recognize that *Lambert*'s and my interpretation of Sections 522(d)(10) and (d)(11) offers a debtor an opportunity for pre-petition planning. For example, it would definitely be in the debtor's advantage to postpone settling a workers' compensation claim until after the bankruptcy petition is filed so as to take advantage of the more generous exemption permitted under Section 522(d)(10)(C). However, such timing advantages are an inevitable consequence whenever clever lawyers and complex laws get together. Moreover, the existence of such advantages is not inherently wrong. Granted, those who exploit the advantage will fare better than those who do not. However, the fact remains that all who avail themselves of the exemptions permitted under these two subsections will benefit to some extent whereas the alternative offered by *Williams* and *Evans* means that some will not benefit at all.

 exemption was available. It does not follow that *LaBelle* would necessarily adhere to the same distinction were the tables reversed and, as is the case here, the debtor was attempting to exempt the proceeds of a workers' compensation settlement as lost future earnings under Section 522(d)(11)(E) because of the unavailability of Section 522(d)(10)(C). Again, there is no reason to treat subsections (d)(10) and (d)(11) as mutually exclusive. Benefits awarded as compensation for lost future earnings can qualify for the broader exemption permitted under Section 522(d)(10)(C) without being precluded from the less generous exemption allowed under Section 522(d)(11)(E) when the (d)(10) exemption is unavailable. Indeed, exemptions are to be liberally construed in favor of the debtor.

> In accordance with the philosophy of exemption laws, it is well settled that the provisions of both the Bankruptcy Act and state laws on the subject should receive a liberal rather than a narrow or strict construction.

*In re Lambert,* 9 B.R. at 800 (quoting from 1A *Collier on Bankruptcy* Sec. 603(3) at p. 798 (14th Ed.1978)); *see also, In re Keeney,* 227 F.3d 679, 683 (6th Cir.2000) ("The Bankruptcy Code should be construed liberally in favor of the debtor.").

I also recognize that *LaBelle, Evans,* and *Williams* all found support for the conclusions they reached in the legislative history. However, such reliance is questionable. The Supreme Court has instructed that legislative history is relevant to statutory interpretation only when the language used by Congress in the statute is unclear.

> [T]his Court has repeated with some frequency: "Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language

and then to the legislative history if the statutory language is unclear."

*Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991).

Moreover, this deference is not to be ignored simply because the interpretation required would lead to a harsh result.

> Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill."

*Lamie v. United States Trustee,* 540 U.S. 526, 538, 124 S.Ct. 1023, 1032, 157 L.Ed.2d 1024 (2004) (emphasis added).

The language of Sections 522(d)(10) and (d)(11) is not complicated. Nor is it on its face ambiguous. Nonetheless, the court in *LaBelle,* for example, chose to delve into the legislative history underlying those two subsections notwithstanding these admonitions. Of course, *LaBelle* justified its effort based upon its desire to discover "a more reasonable interpretation" of those subsections than the one the trustee before it was advocating. However, one cannot help but see the irony of relying upon such an expediency in this instance, for the trustee here is relying upon the legislative history to advocate a harsh result, that being that Debtor should be denied altogether an exemption regarding her settlement of an otherwise exemptible disability claim, when the language used in the exemptions themselves, when considered critically, is much more in line with the reasonable outcome the court in *LaBelle* had in mind.

Moreover, I do not find the legislative history that has been relied upon particularly enlightening. As *LaBelle* put it, "[t]he legislative history of Section 522(d)

sheds very little light on what Congress intended with regard to workers' compensation benefits." 18 B.R. at 170. In fact, the legislative history is confined to a single paragraph in the House Judiciary Committee's report.

Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor. These include social security, unemployment compensation, or public assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, alimony, support, or separate maintenance (but only to the extent reasonably necessary for the support of the debtor and any dependents of the debtor), and benefits under a certain stock bonus, pension, profitsharing, annuity or similar plan based on illness, disability, death, age or length of service. Paragraph (11) allows the debtor to exempt certain compensation for losses. These include crime victim's reparation benefits, wrongful death benefits (with a reasonably necessary for support limitation), life insurance proceeds (same limitation), compensation for bodily injury, not including pain and suffering ($10,000 limitation), and loss of future earnings payments (support limitation). This provision in subparagraph (D)(11) is designed to cover payments in compensation and actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings. Those items are handled separately by the bill.

H.R.Rep. No. 595, 9th Cong. 1st Sess. 362 (1977), *reprinted* in 1978 U.S.Code Cong. & Ad. News at 6318.

Granted, this paragraph does draw a distinction between wage-like benefits being covered by Section 522(d)(10) and losses being covered by Section 522(d)(11). However, the reference hardly warrants the conclusion that the two subsections are to be mutually exclusive.

I am also unable to find within the six sentences of this paragraph any justification for *Evans'* and *Williams'*s conclusion that Congress intended the subsection (d)(11) exemption to be limited to only tort-related awards. I agree that Section 522(d)(11) is intended to include within its scope awards received on account of tort claims. However, I am hard pressed to equate the right to receive "a payment under a life insurance contract" under subsection (d)(11)(C) with a tort-related award. The possibility certainly exists that a death giving rise to a life insurance benefit could have been the result of tortious conduct. However, the probability is much greater that the benefit paid on account of the life insurance policy arose because of a heart attack or some other natural cause. Similarly, I see nothing within the language of Section 522(d)(11)(E) to suggest that the restricted exemption provided therein could not also include settlements, judgments, or awards for lost future earnings arising from workers' compensation or other non-tort related claims.

Nor is the scant legislative history inconsistent with my interpretation of Sections 522(d)(10) and (d)(11), for the committee's comments are simply descriptive. As already discussed, Section 522(d)(10) does include within its scope "certain benefits that are akin to future earnings" and Section 522(d)(11) does encompass "certain compensation for losses." However, it does not follow from such comments alone that awards arising from work-related injuries are to fall within only one category or the other. It seems far more reasonable to refer instead to the statutory language itself and to focus, as I have, on why

Congress would allow the exemption of traceable proceeds with respect to some rights to payment but not allow the exemption of traceable proceeds with respect to other payment rights. "Traditional" weekly benefits that have not yet been paid as of the petition date or that will be paid post-petition fall squarely within the unrestricted exemption permitted by Section 522(d)(10)(C). Indeed, a workers' compensation claim which is pending as of the debtor's bankruptcy petition but which is then settled at a later date for a lump sum would also qualify under Section 522(d)(10)(C). *See, LaBelle*, 18 B.R. at 169, 171. However, a settlement of a worker's compensation claim reached pre-petition is not exemptible under Section 522(d)(10)(C), because, as *Williams* correctly points out, the settlement is not a disability benefit within the meaning of Section 522(d)(10)(C). Nonetheless, the settlement is properly traceable to a worker's compensation claim that is a right that falls within the scope of Section 522(d)(11). Consequently, the settlement, and any property traceable to expenditures of that settlement, may still be eligible for the more limited Section 522(d)(11)(E) exemption.

## CONCLUSION

For the reasons stated herein, the Chapter 7 Trustee's motion for summary judgment is granted to the extent Debtor seeks the exemption of the Medicare Set Aside account under Section 522(d)(10)(C). The monies in that account represent proceeds of the settlement that Debtor and the workers' compensation defendants agreed upon in lieu of the benefits Debtor might have otherwise received had she proceeded with her workers' compensation claim.[18]

However, the Chapter 7 Trustee's motion for summary judgment is denied with respect to Debtor's claimed exemption of the Disability Pay account under Section 522(d)(11)(E). Debtor's Disability Pay account is eligible for exemption under Section 522(d)(11)(E) because it represents property that is traceable to a settlement between Debtor and the worker's compensation defendants regarding Debtor's claim against those defendants to compensate her for lost earnings associated with a disability injury for which they were allegedly liable.

The Chapter 7 Trustee's motion is also denied with respect to Debtor's claimed Section 522(d)(11)(E) exemption of the Medicare Set Aside account. Again, the purpose of this account is to provide the government with a source for reimbursement in the event future Medicare claims are attributable to the work-related injury.[19] Therefore, in one sense the Medicare Set Aside account represents a potential medical benefit as opposed to compensation for lost future earnings. However, in reality the set aside does in fact compensate for lost future earnings. All that the account does is earmark a portion of Debtor's lost earnings for Debtor's future medical needs. Indeed, it stands to reason that at some point in time the government will no longer require this set aside and that Debtor, or more likely her heirs, will be entitled to whatever at that time remains.

Recognizing Debtor's right to claim these two accounts as exempt under Section 522(d)(11)(E) is not dispositive though, because the Section 522(d)(11)(E) exemption is limited to only that which is reason-

---

18. A similar motion would have been granted had Debtor also attempted to exempt her Disability Pay account under Section 522(d)(10)(C).

19. *See,* n. 7, *supra.*

ably necessary to support her and her dependents. The Chapter 7 Trustee also contends that the monies held in these accounts "may" be in excess of what is reasonably necessary for her support.[20] Consequently, further proceedings will be necessary if the Chapter 7 Trustee chooses to pursue this remaining issue further.

My January 4, 2006 scheduling order contemplated the issuance of a written pretrial order by this date. However, that pretrial order was preempted by the Chapter 7 Trustee's motion for summary judgment. I will now issue that pretrial order given that the motion has been adjudicated and that there are potentially disputed matters that still need to be resolved.

An order will enter consistent with this opinion.

---

20. Debtor's schedules indicate that she is single and has no dependants.