*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALVERY PACK,

　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

DAMON CORPORATION,

　　　　　　　*Defendant-Appellee,*

GENERAL R.V. CENTER,

　　　　　　　*Defendant.*

No. 04-2163

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-73601—George C. Steeh, District Judge.

Argued: September 19, 2005

Decided and Filed:　January 5, 2006[*]

Before: DAUGHTREY and MOORE, Circuit Judges; ALDRICH, District Judge.[**]

---

**COUNSEL**

**ARGUED:** Mark P. Romano, CONSUMER LEGAL SERVICES, Garden City, Michigan, for Appellant.　Keith A. Wuotinen, DOLENGA & DOLENGA, Bingham Farms, Michigan, for Appellee. **ON BRIEF:** Mark P. Romano, Karl P. Heil, CONSUMER LEGAL SERVICES, Garden City, Michigan, for Appellant.　Michael D. Dolenga, DOLENGA & DOLENGA, Bingham Farms, Michigan, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.　This case involves state and federal claims for breach of express and implied warranties on a 2002 Damon Intruder Motor Home ("the motor

---

[*] This decision was originally issued as an "unpublished decision" filed on January 5, 2006. The court has now designated the opinion as one recommended for full-text publication.

[**] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

home" or "the RV") manufactured by Defendant-Appellee Damon Corporation ("Damon") and purchased by Plaintiff-Appellant Alvery Pack. Primarily the parties dispute whether defects in the motor home continued to exist during the period under warranty, whether the claimed defects were covered under Damon's warranty, and the length of time the motor home was out of service for repairs.

Pack appeals the district court's order granting Damon's motion for summary judgment on his express- and implied-warranty claims under both state law and the Magnuson Moss Warranty Act ("MMWA"), as well as his claims under the Michigan Consumer Protection Act ("MCPA"). On appeal, Pack argues that the district court erred in granting summary judgment in favor of Damon (1) as to his state-law express-warranty claim because the evidence he has put forth creates a question of fact as to Damon's failure to cure defects under warranty and as to the failure of the essential purpose of the warranty because Damon failed to make repairs within a reasonable time; and (2) as to his state-law implied-warranty claim because Michigan law does not require privity to maintain an implied-warranty claim against a remote manufacturer. Pack further asserts that if this court reverses on either of these claims, it will be necessary to reverse the dismissal of his MMWA and MCPA claims.

For the reasons set forth below, we **REVERSE IN PART** the district court's judgment with regard to the express-warranty claim and **REVERSE** the district court's judgment with regard to the implied-warranty claim. We **REMAND** to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

On September 13, 2002, Plaintiff Alvery Pack purchased the subject motor home from General RV Center ("GRVC") in Brownstown, Michigan. The cost of the RV, including financing, totaled $226,435.60.

The RV was accompanied by a limited warranty from Damon, under which Damon

> warrants that this recreational vehicle . . . will be free from defects in material and workmanship attributable to Damon for a period of one (1) year or 12,000 miles. . . . This Limited Warranty covers only materials, components or parts of the RV manufactured and finally assembled by Damon. . . . In the event that a defect in materials or workmanship is found to exist, Damon will provide for the repair or replacement of such defective material(s) or workmanship at no charge. . . . Damon's obligation to repair or replace defective materials is the sole obligation of Damon under this Limited Warranty.

J.A. at 53 (Damon Warranty). The RV was under warranty from September 13, 2002 until September 12, 2003.

Pack began experiencing problems with the motor home immediately after the purchase date. He alleges that a variety of defects put the RV out of service for a total of 168 days in the first year and that it required nine separate service dates for repairs.

On September 19, 2003, Pack instituted this lawsuit against Damon and GRVC in Wayne County Circuit Court in Michigan, alleging breach of express and implied warranties under state law and the MMWA, violations of the MCPA, revocation of acceptance, breach of contract, and rescission. Defendants removed the case to the Eastern District of Michigan on the basis of the federal claim. The district court dismissed the claims against GRVC because Pack had a valid arbitration agreement with that defendant and granted both of Damon's motions for summary

judgment, dismissing the claims against Damon as well. Plaintiff then timely commenced this appeal.

## II. ANALYSIS

Plaintiff appeals the grant of summary judgment to Damon on his express- and implied-warranty claims under state law and the MMWA and his claims for violations of the MCPA.

## A. Standard of Review

We review a grant of summary judgment de novo. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). "In response, the non-moving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993)). Summary judgment is inappropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The nonmoving party, however, "may not rest upon [its] mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). "[T]he mere existence of a scintilla of evidence" that supports the nonmoving party's claims is insufficient to defeat summary judgment. *Hopson*, 306 F.3d at 432.

## B. Express Warranty

### 1. A Repair-or-Replace Warranty Is an Express Warranty under the Michigan Uniform Commercial Code

As the Michigan Supreme Court has not ruled on whether a repair-or-replace warranty constitutes an express warranty under the Michigan Uniform Commercial Code ("MUCC"), we look to decisions of the Michigan Court of Appeals, "which are binding authority in federal courts in the absence of any Michigan Supreme Court precedent." *Hampton v. United States*, 191 F.3d 695, 702 (6th Cir. 1999). In several cases, the Michigan Court of Appeals has assumed without discussion that a repair-or-replace warranty constitutes an express warranty under the MUCC. *See, e.g.*, *Krupp PM Eng'g, Inc. v. Honeywell, Inc.*, 530 N.W.2d 146, 148-49 (Mich. Ct. App. 1995); *Severn v. Sperry Corp.*, 538 N.W.2d 50, 53-55 (Mich. Ct. App. 1995); *Kelynack v. Yamaha Motor Corp.*, 394 N.W.2d 17, 19-20 (Mich. Ct. App. 1986).

The Michigan Supreme Court would likely also interpret a repair-or-replace warranty extended by a remote manufacturer to be an express warranty under the MUCC. Under the MUCC, an express warranty is created by "[a]n affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." MCL § 440.2313(1)(a). This does not limit the extension of express warranties to direct sellers, and the MUCC definition of a seller — one "who sells or contracts to sell goods" — does not indicate that a seller is restricted

to one who directly sells goods to the consumer. *Id.* § 440.2103(1)(d). Moreover, Damon refers to its warranty as an "EXPRESS WRITTEN LIMITED WARRANTY." J.A. at 54 (Damon Warranty). Given this, the warranty likely formed part of the basis of the bargain, and thus it qualifies as an express warranty.

### 2. Breach of the Express Warranty

Pack alleges several continuing defects for which Damon is responsible and which Damon failed to repair or replace, as well as one defect, the leaning of the motor home, that was not repaired within a reasonable time, thus causing the warranty to fail of its essential purpose.

#### a. A question of material fact exists as to Damon's failure to cure several defects.

Damon's limited warranty on the RV ran for one year from the date of purchase, September 13, 2002. Pack claims that there were eight defects that arose during this period that remained uncorrected: rust; loose slide-out gasket; rear monitor malfunctions; dashboard clock and cigarette lighter malfunction; outside shower does not work properly; fog light fills with water and is corroded; bedroom slide-out does not close completely; and abnormal popping noise from front end while driving.[1] At his deposition, Pack testified that both the clock and the fog light had been corrected.[2] As to the other problems, namely the rust, loose slide-out gasket, rear monitor, outside shower, bedroom slide-out, and the popping noise, Pack's deposition testimony and affidavit indicate that these defects persisted despite Damon's repairs.

To rebut these contentions, Damon puts forth an affidavit from Jason Quillen, GRVC Service Manager, and an expert report from Michael Bukowski, GRVC Service Shop Foreman. Although the district court relied on both the Bukowski Report and the Quillen Affidavit, the Bukowski Report is unsworn and thus is hearsay, which may not be considered on a motion for summary judgment. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 619-20 (6th Cir. 2003). Moreover, Quillen's credentials as an expert as to either RV mechanics or the Damon limited warranty are not clear from the record. In any event, Quillen's affidavit does not defeat Pack's contentions. First, Quillen does not deny the existence of the popping noise, the rust, or the shower problem. Second, as to the two slide-outs, Quillen affirms that the problems did not exist at the time of the inspection, May 19, 2004; however, the condition of the motor home on that date is not dispositive as to whether the slide-outs were repaired within the period under warranty.

Given that circumstantial evidence suffices to prove a defect, *see Caldwell v. Fox*, 231 N.W.2d 46, 51 (Mich. 1975), and that the facts should be viewed in the light most favorable to the nonmoving party, Pack has come forward with sufficient evidence to raise a question of material fact regarding failure to cure the following defects: the slide-out gasket, the bedroom slide-out, the rear monitor, the popping noise, the rust, and the shower.

---

[1] Although Mr Pack's counsel conceded that Damon has not refused to repair any defect, a mere good faith effort to correct defects fails to satisfy a repair-or-replace warranty. *See Kelynack*, 394 N.W.2d at 20.

[2] Neither Plaintiff's deposition nor the work-order forms mention the cigarette lighter, and thus we must conclude that this problem did not exist or had ceased.

### b. Questions of material fact exist as to whether some of the continuing defects are covered under the Damon warranty.

Damon's repair-or-replace warranty covers "materials, components or parts of the RV manufactured and finally assembled by Damon." J.A. at 53 (Damon Warranty). The warranty specifically excludes from coverage "[i]tems added or changed after the RV leaves . . . Damon"; damage resulting from "[n]ormal wear and usage"; damage to otherwise warranted components or parts caused by environmental corrosion; and "[a]ny material, component, or part of the RV that is warranted separately by its manufacturer, including . . . the chassis. . . ." *Id.* at 53-54.

Of the defects for which a question of material fact exists regarding Damon's failure to cure — the two slide-outs, the rear monitor, the popping noise, the rust, and the shower — a question of material fact regarding coverage under the warranty has been raised as to the slide-outs and the rust. The shower problem is caused by a restricter that Pack added to the RV from a prior motor home, and thus it is excluded from coverage. As for the monitor, the warranty exempts from coverage component parts that are separately warranted and includes a nonexhaustive list of such parts. Although the monitor is not named on the list, it is of the same kind as the excluded items listed, and Quillen affirmed that it was excluded as a component part covered under separate warranty. Pack has not provided evidence to rebut this contention. Pack admitted that he did not know the cause of the popping noise and has no evidence suggesting coverage by the warranty. This, combined with a lack of evidence concerning the persistence of this defect,[3] suffices for Damon to have met its burden on this defect.

Damon has failed to meet its burden to show that the slide-outs are not under Damon's warranty.[4] Neither slide-out appears to fall under any exception to Damon's warranty. The Damon warranty claim form noting that Damon fixed the loose slide-out gasket on the RV in March 2002 before Pack bought the unit also tends to show that the slide-outs are covered under warranty. Finally, although the warranty excludes coverage of damage resulting from "[n]ormal wear and usage" and environmental corrosion, which typically might exclude rust, the rust problem existed prior to Pack's purchasing the RV. This indicates that there might be a defect beyond corrosion or normal usage, and thus Pack has raised a genuine issue of fact as to the warranty's coverage of the rust.

Therefore, there are issues of material fact regarding defects related to the slide-out gasket, the bedroom slide-out, and the rust, and thus the grant of summary judgment on the breach of express warranty as to those claims was inappropriate.

### 3. Failure of Essential Purpose

Further, Pack argues that he is not required to prove continuing defects because Damon's limited warranty failed of its essential purpose, which would allow him relief beyond the limited warranty. Although the MUCC allows a warranty agreement to "limit or alter the measure of damages recoverable," MCL § 440.2719(a), where "an exclusive or limited remedy . . . . fail[s] of its essential purpose," the buyer is entitled to other remedies. *Id.* § 440.2719(b)(2).

---

[3] Pack's deposition does not fully support his claim that the popping noise persisted.

[4] Pack argues that a "W" under the "type" column on the GRVC work-order form, which can be found next to the repairs for the two slide-outs, the rear monitor, the popping noise, and the rust, indicates that the defect is covered under Damon's limited warranty. Damon disputes this, claiming that GRVC bills all repairs to Damon, who serves as an intermediary, paying for the work but then billing the respective component manufacturers for the charges for which they are responsible. The record lacks support for either conclusion, and thus this presents a disputed issue of fact regarding the scope of the warranty.

### a.  Repairs or replacements must be completed within a reasonable time.

Pack is entitled to relief on his claim of failure of essential purpose if he can show that Damon failed to repair or replace defects in the RV for which it was responsible within a reasonable time.  *See Kelynack*, 394 N.W.2d at 20 (holding that where a manufacturer extends a repair-or-replace warranty, it "does not have an unlimited time to make the repairs, but rather must repair or replace the parts within a reasonable time").  In *Kelynack*, the Michigan Court of Appeals found that the repair-or-replace warranty on a motorcycle had failed of its essential purpose due to unreasonable delay where the motorcycle became completely inoperable after ten weeks in the plaintiff's possession, then remained at the dealer for over three months, and was finally returned to the plaintiff when the weather precluded its use.  *Id.*; *see also Krupp*, 530 N.W.2d at 149 (holding that a repair-or-replace warranty failed of its essential purpose because the item was out of service for eighteen months and was not entirely repaired for three years).

### b.  Time out of service raises a disputed issue of material fact.

Although the record is not clear on the number of days the motor home was out of service, a view of the record in the light most favorable to the nonmoving party reveals that the motor home was out of service for 162 days in the first year of ownership.[5]  On its face, this appears to be an unreasonable time, and thus if these facts were proven at trial, Damon's warranty would likely be found to fail of its essential purpose.

Damon attempts to rebut Pack's claims by arguing that the repairs that took the most substantial amount of time were not covered under Damon's warranty.  Damon alleges that the leaning problem that led Pack to have his truck serviced at least twice and led to the longest servicing, from April 28, 2003 until August 6, 2003, was caused by the chassis, and thus was not covered by the warranty.  However, Pack has raised a question of material fact as to the cause of this defect by producing evidence that the defect was a coach problem, and thus under warranty.  A Ford work order states:  "right side sitting about 3 [inches] lower th[a]n left" and "conversion package is all on [right] side bathroom, tanks etc.  No suspension problem."  J.A. at 112 (Gorno Ford invoice).  This indicates that the problem is with the coach, which is covered by the warranty, and not the suspension, which is part of the chassis.  A GRVC work order indicates that this was a "coach problem,"[6] and that Damon authorized the coach to be shimmed to correct the problem.  Although Quillen affirmed that he found no leaning when he inspected the RV, Pack's complaint

---

[5] Principally, the completion date of the repair that put the RV out of service for the longest period is unclear.  One form indicates that the repair was completed on June 3, 2003, J.A. at 96, and the other indicates that Pack signed for the unit on August 6, 2003, J.A. at 114.  Damon alleges that the date that Pack signed the work order was not the date that service was completed, but has presented no evidence to support this contention.  Moreover, GRVC's work order form states:  "All service units must be picked up within 48 hours after notification of completion by our service department.  Due to limited space there is a $10.00 per day storage charge after the 48 hour period."  J.A. at 98 (GRVC Work Order Form).  None of the forms indicate that Pack was charged this storage fee.  This presents a genuine issue of material fact that cannot be resolved by the record.  Because we must construe all facts in the light most favorable to the nonmoving party, we will presume that the repairs were not completed until August 6, 2003.  However, even assuming that repairs were completed on June 3, 2003, the motor home was out of service for ninety-seven days during the first year.

[6] Damon argues that the notation on the work order form indicating that this defect was a coach problem is *not* GRVC's or Damon's conclusion, but rather what Pack told GRVC.  There is support for this contention in the record as the work-order form notes that "customer statres [sic] the following problems" above the description of the leaning problem.  *See* J.A. at 113 (GRVC Work Order).

regarding the leaning problem goes to the delay in its repair, not its continuing defectiveness, and thus the RV's condition on the date of its inspection is immaterial.[7]

## C.  Implied-Warranty Claims Do Not Require Privity Under Michigan Law

The Michigan Supreme Court has not yet ruled on whether privity is required to bring an implied-warranty claim under the MUCC.  Where a federal court is deciding an issue of state law that has not been decided by the state's highest court, the federal court should determine how the state's highest court would decide the issue were it faced with it.  *See Meridian Mut. Ins. Co.*, 197 F.3d at 1181.  The federal court should heed the decisions of the intermediate appellate state courts except where the federal court is persuaded that the highest court of the state would not so decide, *id.* (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)), and the federal court may consider applicable dicta of the state's highest court, *Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 807 (6th Cir. 1987).

The MUCC provides that "(1) [u]nless excluded or modified . . ., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," and that "(2) [g]oods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used."  MCL § 440.2314.  The MUCC does not mention any privity requirement to bring a claim under this provision.  *Id.* § 440.2103(1)(d).

Michigan law has not settled whether privity is required to bring an implied-warranty claim under the MUCC.  In 1958, prior to the adoption of the MUCC,[8] the Michigan Supreme Court reversed its traditional privity requirement for implied-warranty claims in an opinion that criticized the privity requirement at length.  *Spence v. Three Rivers Builders & Masonry Supply, Inc.*, 90 N.W.2d 873 (Mich. 1958).  The Michigan Supreme Court followed *Spence*'s repudiation of privity in several subsequent decisions.  *See Hill v. Harbor Steel & Supply Co.*, 132 N.W.2d 54, 56 (Mich. 1965); *Piercefield v. Remington Arms Co.*, 133 N.W.2d 129, 136 (Mich. 1965); *Manzoni v. Detroit Coca-Cola Bottling Co.*, 109 N.W.2d 918, 922 (Mich. 1961).

*Spence* and its progeny have been cited with approval after the adoption of the MUCC to hold that privity is not required to sustain an implied-warranty claim for economic losses.  *See, e.g., Southgate Cmty. Sch. Dist. v. W. Side Constr. Co.*, 247 N.W.2d 884, 886 n.1 (Mich. 1976); *Williams v. Polgar*, 215 N.W.2d 149, 153-55 (Mich. 1974); *Cova v. Harley Davidson Motor Co.*, 182 N.W.2d 800, 802 (Mich. Ct. App. 1970); *Gauthier v. Mayo*, 258 N.W.2d 748, 749 (Mich. Ct. App. 1977); *Reid v. Volkswagen of Am., Inc.*, 512 F.2d 1294, 1298 (6th Cir. 1975); *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 646-50 (E.D. Mich. 2003).  Michigan courts have continued to apply the *Spence* rule after the adoption of the MUCC, stating that the MUCC is "neutral as to its effect on consumer remedies and . . . neither enlarges nor restricts 'the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.'"  *Cova*, 182 N.W.2d at 805 nn.13, 14 (quoting Official UCC Comment to § 2-318); *see also Reid*, 512 F.2d at 1298 (stating that the UCC "was drafted so as to leave the question of privity to state law in recognition of the exact situation already existing in Michigan which was one of the leading states in rejecting the privity defense").

---

[7] Damon tries to rely on Quillen's statement that "all of the Plaintiff's . . . complaints . . . have either been properly repaired *or* are specifically excluded from Damon's limited warranty" to show that the leaning problem was not covered under the warranty.  J.A. at 93 (Quillen Aff. at 2) (emphasis added).  However, as the statement is in the disjunctive, Damon cannot use it to prove that the leaning problem was not covered by the warranty where the statement could just as easily be read to mean that the motor home no longer leaned, as the affidavit earlier stated.

[8] Michigan adopted the UCC in 1964.  *Karl Wendt Farm Equip. Co. v. Int'l Harvester Co.*, 931 F.2d 1112, 1116 (6th Cir. 1991).

In *Cova*, the Michigan Court of Appeals held that although the Michigan Supreme Court had not expressly declared that a consumer may recover from a manufacturer on implied-warranty claims for economic losses without privity of contract, "we are persuaded from our review of the foregoing decisions of our Supreme Court and from the trend of authorities in other jurisdictions that a consumer can sue a manufacturer directly for economic loss resulting from a defect in a product attributable to the manufacturer. . . ."  182 N.W.2d at 804.  In our opinion in *Reid*, we similarly concluded that "Michigan's rejection of the privity requirement in products liability cases is, as we see it, both sweeping and complete," and "is not limited to tort actions as opposed to actions based on warranty whether express or implied."  512 F.2d at 1298.

Despite these numerous authorities abandoning the privity requirement, in *Auto Owners Insurance Co. v. Chrysler Corp.*, 341 N.W.2d 223 (Mich. Ct. App. 1983), the Michigan Court of Appeals departed from these cases without explanation and held that privity was required to bring a claim for breach of an implied warranty for economic loss.  However, in *Great American Insurance Co. v. Paty's, Inc.*, decided just a few years later, the Michigan Court of Appeals shed serious doubt on *Auto Owners*, noting that the *Auto Owners* dissent, which argued that privity is not required for implied-warranty claims, had a "strong argument,"and finding that:

> under Michigan law, vertical privity is not required even where the damages at issue consist solely of economic losses. . . . While the UCC takes no official position on the issue of vertical privity, the practice commentary . . . notes that the Michigan decisions on the question of privity are not affected by the Code.  The Michigan cases which have considered the question have held that it is unnecessary to establish vertical privity, even where the loss is solely economic.

397 N.W.2d 853, 856-57 (Mich. Ct. App. 1986) (citing *Cova* and *Piercefield*).  The *Great American* court, however, allowed the implied-warranty claim to proceed on alternate grounds, and thus despite its criticism of *Auto Owners*, it avoided overturning *Auto Owners*'s approach to the privity requirement.[9]  A subsequent case by the Michigan Court of Appeals then formally adopted the reasoning of the *Auto Owners*'s dissent. *Sullivan Indus. v. Double Seal Glass Co.*, 480 N.W.2d 623, 629 (Mich. Ct. App. 1991).[10]

Although Damon cites several district courts that require privity to sue for breach of an implied warranty, *see, e.g., Parsley v. Monaco Coach Corp.*, 327 F. Supp. 2d 797 (W.D. Mich. 2004); *Pitts v. Monaco Coach Corp.*, 330 F. Supp. 2d 918 (W.D. Mich. 2004); *Ducharme v. A & S RV Ctr., Inc.*, 321 F. Supp. 2d 843 (E.D. Mich. 2004)[11], these cases are not binding on this court and do not have the substantial weight of the decisions of the Michigan Supreme Court and the Michigan

---

[9]The court noted, however, that Judge Gillis, who was in the majority in *Auto Owners*, would have been willing to reconsider his position on the implied-warranty privity requirement were the court to decide this issue. *Great Am. Ins. Co.*, 397 N.W.2d at 857 n.1.

[10]In *Sullivan*, the court decided the issue in conjunction with the application of the economic loss doctrine, which bars tort recovery for product defects where the losses sustained are purely economic. 480 N.W.2d at 627. The court reasoned that whether a products liability claim should sound in contract or tort should be based on the type of injury suffered by plaintiff — economic or personal — rather than on any notions of privity. *Id.* at 629. With this understanding of claims of economic loss, the privity requirement for implied-warranty claims must be abandoned because otherwise a plaintiff would be without remedy for economic losses she has sustained at the hands of a remote manufacturer. In the case at bar, were Pack denied the opportunity to bring breach of warranty claims under the MUCC due to lack of privity, he would be without an opportunity to be made whole because the economic loss doctrine would bar his claims under any tort theory. This problem is rectified by abandoning the privity requirement in such cases.

[11]The Sixth Circuit has recently affirmed this decision in an unpublished summary affirmation. *Ducharme v. A & S RV Ctr., Inc.*, 127 F. App'x 204 (6th Cir. 2005) (per curiam).

Court of Appeals on an issue of Michigan law. *Cf. Salve Regina Coll. v. Russell*, 499 U.S. 225, 231-39 (1991) (holding that district courts' interpretation of state law is owed no deference on review). The district court decisions cited above are also flawed in that they base their analysis primarily on a decision by a fellow district court, *Mt. Holly Ski Area v. U.S. Electrical Motors*, 666 F. Supp. 115 (E.D. Mich. 1987), and decisions by other districts, rather than on how the Supreme Court of Michigan would decide this question, which requires considerably more attention to Michigan Supreme Court and Michigan Court of Appeals decisions.

Based on the foregoing, we conclude that Michigan has abandoned the privity requirement for implied-warranty claims and thus that the district court erred in dismissing Pack's implied-warranty claims for lack of privity.[12]

## III. CONCLUSION

For the foregoing reasons, we **REVERSE IN PART** the district court's dismissal of plaintiff's state-law express-warranty claims, **REVERSE** the district court's dismissal of plaintiff's state-law implied-warranty claim, and **REVERSE** the district court's dismissal of plaintiff's claims under the MMWA and the MCPA. We **REMAND** to the district court for further proceedings consistent with this opinion.

---

[12]Alternatively, the express warranty extended from Damon to Pack could suffice to support the requisite contractual relationship to bring an implied-warranty claim, as the court found in *Great American*. 397 N.W.2d at 857. The facts of the instant case are even stronger than the facts of *Great American* because here Damon made an express warranty directly to Pack, the original retail buyer.