NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0760n.06

No. 08–1591

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Dec 15, 2010

LEONARD GREEN, Clerk

CHARLES J. FARLEY,
    *Plaintiff-Appellee,*

v.

COUNTRY COACH INCORPORATED,
    *Defendant-Appellant*.

On Appeal from the United
States District Court for the
Eastern District of Michigan

_____

Before: KENNEDY, COLE, and ROGERS, Circuit Judges.

**CORNELIA G. KENNEDY, Circuit Judge.** In this diversity action, Defendant-Appellant Country Coach, Inc. appeals a $191,784 jury verdict for Plaintiff-Appellee Charles Farley on a claim for breach of the implied warranty of merchantability on Farley's 2004 Country Coach Magna motor home. In particular, Country Coach alleges that the district court erred by reversing its grant of summary judgment on Farley's implied-warranty claim, denying Country Coach's motions for judgment as a matter of law and for remittitur based on insufficient proof of damages, and denying Country Coach's motion for a new trial due to Farley's attorney's allegedly improper conduct during trial. Because we find each of Country Coach's claims to lack merit, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2003, Plaintiff Charles Farley and his wife Donna, both Michigan residents, purchased a new 2004 Country Coach Magna motor home (the "RV"). Defendant Country Coach, an Oregon corporation, manufactured and assembled the RV. Defendant Technology Research

Corporation ("TRC") manufactured the RV's transfer switch, a major component of the RV's electrical system. Farley purchased the RV from Buddy Gregg Motor Homes, Inc. ("Buddy Gregg"), an authorized Country Coach dealership and repair facility in Knoxville, Tennessee. The purchase price of the RV was $416,860, though Farley also paid $17,534.60 more in taxes and fees associated with the purchase. The RV was covered by a one-year, limited warranty issued by Country Coach upon purchase; TRC provided a similar warranty over the transfer switch.

Farley owned the RV for two-and-one-half years, during which time the RV and its various component parts frequently broke and malfunctioned. Some of the problems Farley and his family experienced while trying to use the RV were: leaks of diesel and glycol fumes into the cabin; engine leaks; electrical surges that caused leaks in the wheel seals and destroyed the water pump; improperly functioning dash gauges; a defective dash air conditioning system; a defective transfer switch that frequently caused the electrical systems to malfunction; improperly tightened steering wheel bolts; a defective latch on the refrigerator door; and issues with the slide-out rooms. Farley sought to have these defects repaired numerous times and at multiple facilities, including Buddy Gregg and Country Coach's factory in Oregon. He also unsuccessfully attempted to make Country Coach take back the RV. In April of 2006, Farley traded the RV to Buddy Gregg for a $245,000 credit towards the purchase of a new Country Coach motor home.

Farley filed the instant suit against Country Coach in the U.S. District Court for the Eastern District of Michigan on April 25, 2005, alleging breach of express and implied warranties under the Uniform Commercial Code ("UCC") and violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301. On August 15, 2005, Country Coach filed a third-party complaint against TRC, seeking indemnity and contribution for any damages caused by the defective transfer

2

switch; Farley filed an amended complaint naming TRC as an additional defendant on March 29, 2006. Though in his original complaint Farley stated his warranty claims under Tennessee law, the parties later stipulated that Michigan law—specifically, Michigan's codification of the UCC ("MUCC")—controlled.

On September 16, 2005, Country Coach filed a motion for partial summary judgment on Farley's implied-warranty claim, alleging that, under the MUCC, the lack of contractual privity between Farley and Country Coach precluded the claim as a matter of law. The district court agreed and dismissed the claim on November 29, 2005. On July 18, 2006, Farley filed a motion to reinstate the implied-warranty claim based on this court's intervening decision in *Pack v. Damon Corp.*, 434 F.3d 810 (6th Cir. 2006). The district court granted this motion in a November 14, 2006 order, relying on the *Pack* court's "express[] holding . . . that 'Michigan has abandoned the privity requirement for implied warranty claims.'" *Farley v. Country Coach, Inc.*, No. 05–71623, 2006 WL 32499464, at *8 (E.D. Mich. Nov. 14, 2006) (order denying summary judgment and reinstating implied-warranty claims) (quoting *Pack*, 434 F.3d at 820). In the same order, the district court denied motions for summary judgment from Country Coach and TRC.

The case proceeded to a jury trial before Magistrate Judge Stephen Whalen from March 12, 2007 to March 21, 2007. At the close of Farley's case, Country Coach moved for judgment as a matter of law, alleging that Farley had failed to present sufficient evidence of damages to create a jury question. The court had previously ruled that the correct measure of damages was "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Mich. Comp. Laws § 440.2714(2). Country Coach argued that—although the court "could potentially determine" that Farley's evidence of the

purchase price "can be used as the price [of the RV] . . . if it would have been a[s] warranted"—there was a "complete lack of . . . evidence submitted as to the actual value of the vehicle at the time that Mr. Farley purchased it." The district court denied the motion, noting that Farley had introduced evidence of the purchase price and trade-in value of the RV and "the jury could reasonably conclude that the amount of normal depreciation would not be as much as the difference between the purchase price and the trade-in price, and that . . . difference would, therefore, be attributable to diminution in value." Country Coach renewed the motion for judgment as a matter of law at the close of all evidence. The district court again denied the motion, reiterating that "there are sufficient facts in this record to present a jury question . . . as to whether a percentage of the devaluation [between the purchase price and trade-in price] . . . is attributable to ordinary depreciation and whether a percentage of that is attributable to defects." The district court presented the case to the jury, which returned a verdict of no cause of action on Farley's express-warranty claim against Country Coach and all of Farley's claims against TRC, but found Country Coach liable on Farley's implied-warranty claim.[1] The jury awarded Farley $189,000 in compensatory damages and $2,784 in consequential damages, for a total award of $191,784. The district court entered judgment in accordance with the jury verdict on March 26, 2007.

---

[1]The jury did not rule on Farley's claims under the MMWA because, prior to trial, the district court granted Country Coach's motion in limine requesting "an Order stating that Plaintiff is only entitled to relief under the Magnuson-Moss Warranty Act if Plaintiff is successful in proving a breach of state warranty law claim and that Plaintiff's damages under the Magnuson-Moss Warranty Act include only those available under state law and reimbursement of reasonable attorney fees and costs." Shortly after the district court denied Country Coach's motions for post-judgment relief, it awarded Farley $78,460.63 in attorney fees and costs, along with pre-judgment and post-judgment interest. *Farley v. Country Coach, Inc.*, No. 05–71623, 2008 WL 905215, at *6–*7 (E.D. Mich. Mar. 28, 2008) (order awarding attorney fees).

4

After entry of judgment, Country Coach filed a motion for judgment as a matter of law or, in the alternative, for a new trial on several grounds, including the previously-asserted claim that Farley had presented insufficient proof of his damages as well as the contention that several improper statements made by Farley's counsel in closing argument caused jury confusion. Country Coach also filed a motion for remittitur, again based on Farley's allegedly-deficient damages evidence. The district court denied all of Country Coach's post-judgment motions. *Farley v. Country Coach, Inc.*, 550 F. Supp. 2d 689 (E.D. Mich. 2008) (order denying post-judgment motions). On the issue of damages, the court determined that Farley had met his burden of proof, reasoning that "the jury could reasonably infer that the value [of] the 2004 Country Coach Magna as warranted would have had been *at least* $416,000.00, the contract price," *id.* at 695, and "the evidence in this case was sufficient for a reasonable jury to find, without resort to speculation, that the value of the non-conforming motor home at the time of acceptance (2003) was the same as the value the Plaintiff received when he traded it in (2006): $250,000.00," *id.* at 696. The court dismissed Country Coach's claim for a new trial based on inappropriate conduct by Farley's counsel after concluding that "the [jury] instructions given in this case were adequate to cure any prejudice arising from counsel's comments." *Id.* at 694. Country Coach filed a timely notice of appeal from the judgment.

**ANALYSIS**

Country Coach appeals several of the district court's rulings related to Farley's implied-warranty claim. First, Country Coach challenges the district court's reinstatement of the implied-warranty claim based on *Pack*. Second, Country Coach asserts that the district court erroneously denied its motions for judgment as a matter of law and its motion for remittitur on the implied-warranty claim, reasserting on appeal its argument that Farley presented inadequate proof of

5

damages.  Third, Country Coach contends that the district court abused its discretion by denying the

motion for a new trial based on alleged misconduct by Farley's attorney during trial, particularly in

closing argument.  We conclude that none of these claims requires reversal.

## I.        Reinstatement of the Implied-Warranty Claim

Country Coach first alleges error in the district court's reinstatement of Farley's implied-

warranty claim, arguing that, notwithstanding this court's contrary decision in *Pack*, Michigan law

requires contractual privity to state a claim for breach of implied warranty based on economic losses.

Because the district court's reinstatement of Farley's implied-warranty claim is essentially a decision

to deny Country Coach summary judgment on a purely legal question, we review it *de novo*.  *See*

*Paschal v. Flagstar Bank*, 295 F.3d 565, 571–72 (6th Cir. 2002) (holding that review of the district

court's denial of summary judgment on a pure legal question is proper even after the movant loses

a full trial on the merits).[2]

The district court correctly reinstated Farley's implied-warranty claim under *Pack*.  As

Country Coach conceded at oral argument, we are bound by the *Pack* court's holding "that Michigan

---

[2]The fact that Farley styled his motion to reinstate as a motion for reconsideration under Federal Rule of Civil Procedure 60(b) does not impact the *de novo* standard of review applicable to the district court's determination.  Rule 60(b) and its corresponding abuse-of-discretion standard of review apply only when a party seeks relief from a "final judgment, order, or proceeding."  Fed. R. Civ. P. 60(b).  In the instant case, the district court reinstated the implied-warranty claim before it entered final judgment, making Farley's motion "effectively a motion for reconsideration of summary judgment [that] '[t]he district court was . . . free to reconsider or reverse . . . for any reason.'"  *ACLU of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (second alteration in original) (quoting *Cameron v. Ohio*, 344 F. App'x 115, 118 (6th Cir. 2009) (unpublished decision)); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  Therefore, the district court enjoyed complete discretion to entertain Farley's motion, and our review is limited to the merits of the court's decision to reinstate.

has abandoned the privity requirement for implied-warranty claims" for economic losses, 434 F.3d at 820, absent further development of Michigan law. As of yet, the Michigan Supreme Court has not addressed this issue; though at the time Country Coach filed its principal brief, the court had asked the parties in the pending case *Davis v. Forest River, Inc.* to address "whether Michigan law provides a cause of action for breach of warranty and a remedy of rescission where the plaintiff and the defendant are not in privity of contract," 750 N.W.2d 592, 592 (Mich. 2008), the court has since issued an opinion in the case declining to rule on this question, 774 N.W.2d 327 (Mich. 2009). Furthermore, dicta in recent opinions of the Michigan Court of Appeals reaffirm the *Pack* court's conclusion that implied-warranty claims do not carry a privity requirement under Michigan law, when the plaintiffs in those cases sought only economic damages. *See Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 343 (Mich. Ct. App. 2009) ("[O]ur Supreme Court . . . has previously held that for some remote purchasers it is unnecessary in actions for breach of implied warranty to establish privity of contract with the manufacturer." (citing *Piercefield v. Remington Arms Co.*, 133 N.W.2d 129, 134–35 (Mich. 1965))); *see also Jetts v. Stewart Bldg. Co.*, No. 290635, 2010 WL 2384931, at *4 (Mich. Ct. App. June 15, 2010) (unpublished per curiam decision) ("The fact that plaintiffs lacked any privity of contract with [defendants] is of no consequence since the claims involved a breach of implied warranties." (citing *Heritage Res.*, 774 N.W.2d at 343)). Therefore, the district court did not err by reinstating Farley's implied-warranty claim.

## II. Evidence of Damages

Country Coach next argues that Farley did not present sufficient evidence to support the jury's award of $189,000 in compensatory damages on the implied-warranty claim, and the district

court therefore should have granted Country Coach judgment as a matter of law or remitted the jury's verdict. We conclude that, contrary to Country Coach's allegations, Farley presented adequate evidence of his damages under the applicable measure of the difference between the value of the RV as warranted and its actual value, *see* Mich. Comp. Laws § 440.2714(2), and the jury's award was within the scope of this evidence. As a result, it was not error for the district court to uphold the jury's verdict.

### A. *Motion for Judgment as a Matter of Law*

"[W]hen faced with a motion for judgment as a matter of law based on a challenge to the sufficiency of the evidence, as here, we apply 'the standard of review employed by the courts of the state whose substantive law controls the action.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 303 (6th Cir. 2007) (quoting *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 993 (6th Cir. 2004)). Under Michigan law, a motion for directed verdict or judgment notwithstanding the verdict ("JNOV") should be granted only if the evidence viewed in the light most favorable to the nonmoving party fails to establish a claim as a matter of law. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003) (citing *Wilkinson v. Lee*, 617 N.W.2d 305, 306–07 (Mich. 2000)). "If the evidence is such that reasonable people could differ, the question is for the jury and JNOV [or a directed verdict] is improper." *Pontiac Sch. Dist. v. Miller, Canfield, Paddock & Stone*, 563 N.W.2d 693, 698 (Mich. Ct. App. 1997) (citing *McLemore v. Detroit Receiving Hosp.*, 493 N.W.2d 441, 443 (Mich. Ct. App. 1992)). "In reviewing a trial court's ruling on a motion for a directed verdict [or JNOV], this Court examines 'the testimony and all legitimate inferences that may be drawn in the light most favorable to the [nonmoving party].'" *Kubczak v. Chemical Bank*

8

*& Trust Co.*, 575 N.W.2d 745, 749 (Mich. 1998) (alteration in original) (quoting *Mulholland v. DEC Int'l Corp.*, 443 N.W.2d 340, 349 (Mich. 1989)).

In the instant case, the district court determined, and the parties agree, that the measure of Farley's damages on the implied-warranty claim was "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Mich. Comp. Laws § 440.2714(2); "The party asserting a claim has the burden of proving his damages with reasonable certainty." *S.C. Gray, Inc. v. Ford Motor Co.*, 286 N.W.2d 34, 39 (Mich. Ct. App. 1979). Country Coach argues that Farley failed to present enough evidence to establish either the value of the RV as accepted or the value of the RV if it had been as warranted at the time of acceptance. In particular, Country Coach maintains that Farley's only evidence of the actual value of the RV—the $245,000 trade-in price he received for the RV in April 2006, more than two-and-a-half years after he purchased it—is insufficient as a matter of law to submit the question to a jury.

Farley's evidence of damages was sufficient to create a jury question. To satisfy his burden of production on the issue of damages, Farley first had to present evidence of the value of the RV as warranted at the time and place of acceptance. The "primary standard" for the value of goods as warranted "is the fair market value of the goods at the time of acceptance," but "[w]hen the fair market value cannot be easily determined, or the parties do not raise it as a measure of 'value', courts have generally relied on the contract's purchase price as strong evidence of the value of the nonconforming goods as warranted." *Intervale Steel Corp. v. Borg & Beck Div., Borg-Warner Corp.*, 578 F. Supp. 1081, 1090 (E.D. Mich. 1984) (applying Michigan law); *see also Mayberry v. Volkswagen of Am., Inc.*, 692 N.W.2d 226, 237 (Wis. 2005) (collecting cases). Here, Farley not only

attested to the $416,860 purchase price of the RV, but also demonstrated that "the suggested list price of the Magna in question was $515,000.00." *Farley*, 550 F. Supp. 2d at 695. This is more than enough to sustain his burden of presenting evidence of the value of the RV as warranted.

The second value on which Farley was obligated to present evidence was the actual value of the RV with its defects at the time and place of acceptance. Country Coach argues that Farley's only piece of evidence on this point was the fact that he received a $245,000 trade-in value on the RV in April 2006, which is insufficient to establish the actual value of the RV at the time of purchase more than two-and-a-half years earlier. *See Small v. Savannah Int'l Motors, Inc.*, 619 S.E.2d 738, 742 (Ga. Ct. App. 2005) ("[Plaintiff] presents no evidence of the value of the car as accepted, but only the wholesale trade-in value of the BMW an indeterminate time after the transaction."). However, "[n]umerous courts and commentators have recognized that the price obtained for defective goods on resale is probative as to the value of the goods actually received." *Mayberry*, 692 N.W.2d at 239 (collecting cases); *see also Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 759 (6th Cir. 2008) ("[I]t seems to us that the trade-in value would be as reasonable an estimate of what the R.V. is worth to Plaintiffs as the retail value."). Even if, as Country Coach argues, the trade-in price standing alone does not reflect the retail or wholesale value of the RV, Farley also testified he had no reason to doubt that the actual value of the RV at the time of trade in was $250,000, and he had also received an estimate six months earlier from Buddy Gregg valuing the RV at $300,000. *Farley*, 550 F. Supp. 2d at 695–96. This testimony is sufficient to create a jury question on the value of the defective RV. *See Mayberry*, 692 N.W.2d at 238 ("[A]n owner of property may testify as to its value and . . . such testimony may properly support a jury verdict for damages, even though the opinion is not corroborated or based on independent factual data." (citing *D'Huyvetter v. A.O. Smith Harvestore*

10

*Prods.*, 475 N.W.2d 587, 593 (Wis. Ct. App. 1991))); *see also Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 627–28 (Ill. 2006).

Country Coach contends that Farley has not met his burden because the RV's value at the time of trade in is not probative of its value at the time of acceptance, given that two-and-a-half years had elapsed between the original transaction and the trade in. *Cf. Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 802 (Tex. App. 1987) ("Proof of market value at the time of trial is no evidence of value at the time of acceptance." (citing *Overseas Motors Corp. v. First Century Christian Church*, 608 S.W.2d 288, 289–90 (Tex. Civ. App. 1980))). In support of this argument, Country Coach offered at trial expert testimony that the RV's condition and service history around the time of trade in did not diminish its value, along with assertions by its expert that "in general, RVs have large depreciation factors," *Farley*, 550 F. Supp. 2d at 696. Therefore, according to Country Coach, the difference between the purchase price and the trade-in price for the RV must have been due to depreciation over time as opposed to any diminution in value based on the RV's defects.

Nonetheless, the fact that the jury found Country Coach's depreciation argument unpersuasive does not mean that Farley failed to meet his burden with respect to the value of the defective RV at the time of acceptance. The jury reasonably could conclude that the RV's value around the time of trade-in equated to its value at the time of acceptance without speculating as to the measure of Farley's damages. For example, the jury might have determined that any depreciation in the RV's value was offset by the increased value of the RV after Farley had its numerous defects repaired. Alternatively, the jury might have concluded that the RV suffered negligible depreciation either because, as the district court noted, Country Coach "fail[ed] to offer any concrete evidence on

11

that issue," *id.*, or because Farley testified that he was largely unable to use the RV due to its numerous defects, *compare* Trial Tr. vol. 2, 186–87, Mar. 13, 2007 (confirming that Farley did not take any major trips in the RV that did not result in, or were not motivated by, a need for repairs), *with Chapman v. Upstate RV & Marine*, 610 S.E.2d 852, 857 (S.C. Ct. App. 2005) (concluding that the fair market value of a defective boat at the time of acceptance was equal to its value at the time of revocation based in part on evidence that the owners had used the boat infrequently between acceptance and revocation). Regardless of how persuasive we find Country Coach's depreciation argument, these alternate theories are plausible and "[t]his Court [does not have] the authority to substitute its judgment for that of the jury." *Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 588 (Mich. 1986). Therefore, Farley presented enough evidence of the RV's value as warranted and its actual value at the time and place of acceptance to create a question of fact for the jury, and the district court did not err by denying Country Coach's motions for judgment as a matter of law on Farley's implied-warranty claim.

## B. Motion for Remittitur

When deciding a motion for remittitur in a case governed by state law, "'[t]he role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under [Federal Rule of Civil Procedure] 59, whether a new trial or remittitur should be ordered.'" *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 435 & n.18 (1996) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)). In our review of a district court's determination of such a motion, we are "guided by the damage-control standard state law supplies," but we will only reverse for an abuse of discretion. *Id.* at 438–39. Under Michigan law, a trial court can remit a jury verdict to the

12

"highest . . . amount the evidence will support" only "[i]f the court finds that the only error in the trial is the . . . excessiveness of the verdict." Mich. Ct. R. 2.611(E)(1). When ruling on whether a verdict is excessive, a court can consider "objective considerations relating to the actual conduct of the trial or to the evidence adduced," *Palenkas v. Beaumont Hosp.*, 443 N.W.2d 354, 356 (Mich. 1989) (emphasis omitted), including the following:

> whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; . . . whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; . . . whether the amount actually awarded is comparable to awards in similar cases within the state and in other jurisdictions.

*Id.* "A verdict should not be set aside simply because the method of computation used by the jury in assessing damages cannot be determined, unless it is not within the range of evidence presented at trial." *Diamond v. Witherspoon*, 696 N.W.2d 770, 782 (Mich. Ct. App. 2005) (citing *Green v. Evans*, 401 N.W.2d 250, 255 (Mich. Ct. App. 1985)).

The jury's award of $189,000 in compensatory damages is within the range supported by the evidence adduced at trial. Based on Farley's testimony, the jury could conclude that the value of the RV as warranted was somewhere between the $416,860 purchase price and the $515,000 list price, and that the value of the defective RV was between its $245,000 trade-in value and the $300,000 value estimate given to Farley by Buddy Gregg. These figures support a compensatory damages award between $116,860 and $265,000, with the actual award falling squarely in the middle of this range.

Country Coach advances a host of arguments as to why the $189,000 award was the result of speculation or confusion on the part of the jury, based mainly on Farley's counsel's closing argument requesting this amount as the difference between the approximately $434,000 that Farley

actually paid for the RV, taking into account taxes and fees, and the $245,000 trade-in credit he received for it. Regardless of whether Country Coach is correct that the jury should not have factored taxes and licensing fees into the RV's value as warranted, or should have set the actual value of the RV at $300,000 based on mitigation principles, Country Coach can produce no admissible evidence that the jurors relied on the calculation proposed by Farley's attorney to reach its verdict. *See* Fed. R. Evid. 606(b) (stating that "[u]pon an inquiry into the validity of a verdict . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith," unless an enumerated exception applies). The jury was properly instructed that the measure of damages for a breach of an implied-warranty claim "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted," that "[t]he plaintiff has the burden of proving his damages with reasonable certainty [and] you must not speculate as to the amount of plaintiff's damages," and that "[a]rguments, statements, and remarks of attorneys are not evidence and you should disregard anything said by an attorney which is not supported by the evidence or by your general knowledge and experience." The damage award returned by the jury was within the range supported by Farley's evidence and was not clearly the result of "improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact." *Palenkas*, 443 N.W.2d at 356. Therefore, the verdict was not excessive and the district court did not abuse its discretion by denying Country Coach's motion for remittitur.

## III. Attorney Misconduct

Country Coach's final claim involves the district court's denial of its motion for a new trial based on allegedly improper and prejudicial statements made by Farley's counsel during trial and at closing argument. Because the district court did not abuse its discretion in concluding that any prejudice resulting from these remarks was cured by its "clear[] instruct[ions to] the jurors that they were to decide the case based on the testimony and evidence presented in court, and that the arguments and statements of counsel were not evidence they could consider," *Farley*, 550 F. Supp. 2d at 694, the court did not err by denying the motion for a new trial.

The district court's consideration of a motion for a new trial is governed by Federal Rule of Civil Procedure 59, which this court has interpreted "to require a new trial only 'when a jury has reached a "seriously erroneous result" as evidenced by[] (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006) (alteration in original) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996)). We review a district court's decision to deny a motion for a new trial for abuse of discretion, and "will reverse such a decision only if we have 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). "[T]his Court has declared that 'the power to set aside [a] verdict for misconduct of counsel should be sparingly exercised on appeal.'" *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (quoting *Twachtman v. Connelly*, 106 F.2d 501, 509 (6th Cir. 1939)). Nevertheless, "'counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated

15

subjects, and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside.'" *Id.* (quoting *Twachtman*, 106 F.2d at 508–09).

Country Coach alleges that several inappropriate actions by Farley's counsel led to jury confusion and therefore required a new trial. In particular, Country Coach objects to several statements made by Farley's attorney during closing argument. First, it argues that Farley's counsel improperly commented on Country Coach's failure to introduce into evidence "records of the number of days an RV is normally out of service," claiming that it mischaracterizes the testimony of Jack Fagan, a former Country Coach employee, as to whether such records exist. Second, Country Coach objects to references to repair records not in evidence for the RV after it was traded in to Buddy Gregg, asserting that Farley's attorney inappropriately asked the jury to draw an adverse inference from Country Coach's failure to introduce these records into evidence and speculated as to what Buddy Gregg employees would have testified regarding these records. Finally,[3] Country Coach challenges Farley's counsel's request for lost-time damages despite a prior ruling from the court that such damages were not compensable, as well as counsel's decision to propose a calculation of damages for the first time in his rebuttal. In addition to these complaints about closing arguments, Country Coach also objects to statements made by Farley's attorney during his cross examination of James Riccio, a TRC employee, regarding the content of an email not admitted into evidence.[4]

---

[3]In its brief, Country Coach also asserts that at closing "Plaintiff's counsel made a number of statements," unsupported in the record, "regarding warranty claims and warranty claims allegedly being paid by Country Coach." However, it provides no citation for these alleged statements, and our review of Farley's closing argument did not identify them.

[4]Country Coach also claims that Farley's counsel referred to an email not in evidence during closing arguments, specifically while he was explaining Farley's argument that Country Coach improperly failed to install a cover over the RV's transfer switch. Again, Country Coach offers no citation for these comments, and Farley's attorney's argument on this point appears to rely on

16

Under the extremely deferential standard we employ when reviewing a refusal to set aside a jury verdict for attorney misconduct, we conclude that the district court did not err by denying Country Coach's motion for a new trial on this ground. Most of the comments challenged by Country Coach are simply Farley's take on evidence that leaves room for interpretation. *Compare* Trial Tr. vol. 7, 94–95, Mar. 20, 2007 ("Why didn't [Country Coach] bring in records that show you the average coach has as many problems as Farley's had. . . . They've got the records. They're admissible."), *with* Trial Tr. vol. 6, 49–50, Mar. 19, 2007 (questioning of Fagan by Farley's counsel, which included the following exchange: "Q. Well, were there any records or other way of determining the average number of complaints an owner of a new County Coach would express or voice within the first twelve months of their ownership? A. There were reports generated in an effort to identify the number of, and the types, of complaints and average cost and so on and so forth."). Trial counsel may propose these types of favorable inferences drawn from the evidence, or even a party's failure to introduce certain types of evidence, without improperly influencing the jury.

Country Coach's allegations that Farley's counsel referred to material not in evidence are more concerning, but Country Coach has failed to demonstrate "a reasonable probability that the verdict of a jury has been influenced by such conduct." *Peter Kiewit Sons' Co.*, 624 F.2d at 756 (quoting *Twachtman*, 106 F.2d at 508–09). Both in response to several of Country Coach's objections to Farley's closing argument and when submitting the case to the jury, the district court instructed the jury that "[a]rguments, statements and remarks of attorneys are not evidence and you should disregard anything said by an attorney which is not supported by the evidence or by your

---

Riccio's testimony rather than any document not in evidence. In fact, the record indicates that the only document to which Farley's attorney referred in connection with Riccio's testimony appears to be the email properly admitted as Plaintiff's Exhibit 79.

general knowledge and experience." Country Coach has not shown that this curative instruction was insufficient to overcome any prejudice resulting from Farley's attorney's allegedly improper statements. Similarly, Country Coach has not demonstrated that any prejudice from Farley's counsel's vague request for lost-time damages, or his proposed damages calculation, was not adequately cured by the court's instructions on damages, which relayed the appropriate measure of damages and noted that "[t]he law in these types of cases does not allow you to award loss of use, interrupted or lost vacation time, inability to use the motor home, days out of service, inconvenience, aggravation, or emotional damages." Given the dubious nature of Country Coach's claim that these few isolated statements were improper, and the likelihood that any prejudice was cured by the court's jury instructions, it was not an abuse of discretion to deny Country Coach's motion for a new trial due to unfairness resulting from Farley's counsel's allegedly inappropriate conduct.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

18