RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0116p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PAMELLA MONTGOMERY, on behalf of herself and for the benefit of all with the common or general interest, any persons injured, and all others similarily situated,

        *Plaintiff-Appellant,*

        *v.*

KRAFT FOODS GLOBAL, INC., a Delaware Corporation; STARBUCKS CORPORATION, a Washington Corporation,

        *Defendants-Appellees.*

No. 15-1283

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cv-00149—Gordon J. Quist, District Judge.

Argued: October 14, 2015

Decided and Filed: May 16, 2016

Before: BOGGS, SUTTON, and COOK, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Timothy H. McCarthy, Jr., Okemos, Michigan, for Appellant. Aaron M. Panner, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, Washington, D.C., for Appellees. **ON BRIEF:** Timothy H. McCarthy, Jr., Okemos, Michigan, for Appellant. Aaron M. Panner, Caitlin Hall, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, Washington, D.C., Dean N. Panos, Thalia L. Myrianthopoulos, JENNER & BLOCK LLP, Chicago, Illinois, for Appellees.

1

---

**OPINION**

---

COOK, Circuit Judge.   Plaintiff Pamella Montgomery bought a Tassimo, a single-cup coffee brewer manufactured by Kraft Foods, expecting it to brew Starbucks coffee.   After the purchase, however, she struggled to find Starbucks T-Discs—single-cup coffee pods compatible with the brewer.   In fact, the Starbucks T-Disc supply eventually disappeared as Kraft's business relationship with Starbucks soured.   Disappointed with her purchase, Montgomery sued Kraft and Starbucks (Defendants) on behalf of a class for violations of various Michigan laws.   After dismissing several claims and denying class certification on the rest, the district court entered judgment in Montgomery's favor when she accepted Defendants' joint offer of judgment under Federal Rule of Civil Procedure 68.   Montgomery now appeals the dismissal of her claims for breach of express and implied warranties, the denial of class certification on her consumer-protection claims, and the attorney's fees the district court awarded as part of the Rule 68 settlement.   We AFFIRM the district court's dismissal of the warranty claims, DISMISS the class-certification appeal as moot, and AFFIRM the attorney's-fees award.

**I.**

Montgomery purchased a Tassimo from her local grocery store that bore a sticker reading: "Featuring Starbucks® Coffee."   But as Starbucks T-Discs became "increasingly difficult and [later] impossible to find," she learned that Starbucks had announced its plan to terminate its distribution agreement with Kraft and that the two companies were embroiled in arbitration over the contract.   *See Kraft Foods Global, Inc. v. Starbucks Corp.*, 411 F. App'x 428 (2d Cir. 2011).   In response, Montgomery sued both companies on behalf of a class for violation of the Michigan Consumer Protection Act (MCPA), innocent misrepresentation, breach of express and implied warranties, and breach of contract.

Defendants each moved to dismiss the complaint for failure to state a claim, and the district court, having first found the innocent misrepresentation claim abandoned, granted the motions as to the claims for breach of express warranties, breach of implied warranty, and breach

of contract, but denied the motion as to several MCPA claims.  Montgomery then requested class certification on those remaining claims, which the district court denied.  Seeking a resolution— encouraged by the district court—Defendants submitted a joint Rule 68 offer of judgment, agreeing to pay MCPA statutory damages of $250, Mich. Comp. Laws § 445.911(2), plus reasonable attorney's fees and costs to be determined by the court.  Montgomery accepted the offer of judgment, and requested $174,786.50 in attorney's fees plus $5,183.56 in costs. Viewing that amount as unreasonable, the district court instead ordered Defendants to pay Montgomery $6,767 in fees and costs.  She appeals the dismissal of her warranty claims, the denial of class certification, and the attorney's-fees award.

**II.**

**A.     Jurisdiction over the Warranty-Claim Appeal**

We first respond to Defendants' position that Montgomery's agreement to settle her individual consumer-protection claims divests this court of jurisdiction to consider her challenge to the interlocutory dismissal of her warranty claims.  But a confession of judgment by defendants on fewer than all claims moots only the claims resolved in the plaintiff's favor by the agreed judgment; other issues remaining in the case may be appealed.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980); *see also UAW v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983) (en banc) ("[T]here are instances 'in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot.'" (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394 (1981))).

We read the record as showing that Montgomery settled only her individual consumer-protection claims.  Defendants' Rule 68 offer of judgment reads:

> [Defendants] offer to allow judgment to be taken against them under Plaintiff's First Amended Class Action Complaint and in favor of:
> > Plaintiff in the amount of $250.00, inclusive of all damages that may be assessed against Defendants under the Michigan Consumer Protection Act, M.C.L. § 445.911(2), plus reasonable attorneys' fees and costs actually incurred and attributable to the prosecution of Plaintiff's individual claims, as determined by the Court under applicable law.

Though Defendants now argue that the settlement merged all of Montgomery's claims, when responding to her attorney's-fees request at the district court, Defendants actually *distinguished among them*, noting that "the great majority of Plaintiff's claims were dismissed by the Court" and that Montgomery "agreed to settle her *remaining* claims for $250." Thus, because both parties viewed the offer as extinguishing only Montgomery's consumer-protection claims, we maintain jurisdiction over her appeal of the warranty claims' dismissal.

**B.          Dismissal of Warranty Claims**

We review the district court's dismissal of Montgomery's warranty claims under Federal Rule of Civil Procedure 12(b)(6) de novo, looking for a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 664 (6th Cir. 2005)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Montgomery alleges that Defendants breached express warranties and the implied warranty of merchantability under the Michigan Uniform Commercial Code. Mich. Comp. Laws §§ 440.2313, 2314. We examine each claim in turn.

1. *Express Warranty*

Montgomery claims that Defendants made and breached several express warranties: (1) The Tassimo afforded customers the "present and continued availability" of compatible Starbucks T-Discs, (2) the Tassimo was "designed for use" with the Starbucks T-Discs, and (3) Starbucks T-Discs were "designed for use" with the Tassimo. Kraft moved to dismiss the express-warranty claim because Montgomery failed to plead that she was in privity of contract with Defendants, and Montgomery countered that, as a third-party beneficiary of the Kraft-Starbucks distribution agreement, she met the privity requirement. The district court rejected Montgomery's assertion of third-party-beneficiary status and dismissed the express-warranty claim against both Defendants on privity grounds.

None of Montgomery's arguments persuade us that the district court erred in its dismissal. Though the Michigan Supreme Court has yet to rule on the privity issue regarding express-warranty claims, a Michigan Court of Appeals concluded that, because an express warranty constitutes a specific contract term, "privity of contract *is* necessary for a remote purchaser to enforce a manufacturer's express warranty." *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 343 n.12 (Mich. Ct. App. 2009). "[D]ecisions by 'the Michigan Court of Appeals are binding authority where the Michigan Supreme Court has never addressed the issue decided therein.'" *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012) (quoting *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 n.1 (6th Cir. 2011)).

Montgomery insists, however, that no privity requirement exists for express-warranty claims under Michigan law, relying on our statement in *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006), that the Michigan Uniform Commercial Code "does not limit the extension of express warranties to direct sellers." But *Pack* predated the Michigan Court of Appeals' *Heritage* decision, and we follow *Heritage* "until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise." *Wieczorek v. Volkswagenwerk, A.G.*, 731 F.2d 309, 310 (6th Cir. 1984).

To properly plead a breach-of-express-warranty claim then, Montgomery needed to allege that she was in privity with Defendants. She didn't; her complaint acknowledged that she bought her Tassimo from a Fred Meijer grocery store, not directly from Defendants. And Montgomery's appeal abandons the third-party-beneficiary theory she pressed before the district court. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991)). Accordingly, we affirm the district court's dismissal of Montgomery's express-warranty claim.

### 2. *Implied Warranty of Merchantability*

Montgomery also claims that Defendants breached the implied warranty of merchantability. Under Michigan law, every seller warrants, among other things, that the sold goods (1) "are fit for the ordinary purposes for which [the] goods are used" and (2) "conform to the promises or affirmations of fact made on the container or label if any." Mich. Comp. Laws

§ 440.2314(2)(c), (f).  The goods must have been "defective when they left the possession of the manufacturer or seller" for a plaintiff to succeed on a breach-of-implied-warranty claim. *Guaranteed Constr. Co. v. Gold Bond Prods.*, 395 N.W.2d 332, 336 (Mich. Ct. App. 1986) (citing *Kupkowski v. Avis Ford, Inc.*, 235 N.W.2d 324, 330 (Mich. 1975)).

In *Pack*, we explained that "Michigan has abandoned the privity requirement for implied-warranty claims," 434 F.3d at 820, and *Heritage* left that proposition unchanged, 774 N.W.2d at 344 (noting confusion about whether the lack of contractual privity bars implied-warranty claims and refusing to address the issue).  Thus, Montgomery's claim for breach of the implied warranty of merchantability survives the otherwise-disqualifying lack of contractual privity.

Yet her claim falls short for other reasons.  First, Montgomery's complaint failed to allege that the Tassimo was unfit for its ordinary purpose.  "Merchantable is not a synonym for perfect," *Guaranteed Constr. Co.*, 395 N.W.2d at 336, and the goods need only be of "average quality within the industry," *Bosway Tube & Steel Corp. v. McKay Mach. Co.*, 237 N.W.2d 488, 490–91 (Mich. Ct. App. 1975) ("[T]he warranty of merchantability is that the goods are of average quality within the industry, while the warranty of fitness is that the goods are fit for the purposes for which they were intended." (citing *Ambassador Steel Co. v. Ewald Steel Co.*, 190 N.W.2d 275 (Mich. Ct. App. 1971))).[1]  Montgomery's complaint includes no allegation that her Tassimo is unfit for its ordinary purpose—brewing coffee and other hot beverages.

Nor did she plausibly allege that the goods failed to conform to the promises or affirmations of fact made on the Tassimo's container or label.  Montgomery directs us to the photographs of the Tassimo packaging she attached to her response to Starbucks's motion to dismiss.  The complaint referred to these packaging-label photos, making them a cognizable part of the record.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  But these don't help Montgomery.  The packaging promises that the Tassimo "Featur[es] Starbucks® Coffee," and invites customers to "[e]njoy the rich, full taste of Starbucks® coffee, one perfectly brewed cup at a time."  Canvassing the complaint, we find no suggestion that the brewer failed to live up to

---

[1]Montgomery brings no claim for breach of the warranty of fitness.

these promises when Montgomery bought it. Instead, she alleged that "[a]fter the system was purchased, with time it became increasingly difficult and impossible to find and purchase the Starbucks [T-Discs]."

Montgomery now contends that she meant to say she was unable to brew Starbucks coffee at the time of her purchase. But she neither sought to amend her complaint in that manner nor did she make this argument below. We therefore decline to consider it. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Because Montgomery's Tassimo conformed to the promises on its container when she purchased it, she cannot claim it was defective when it left the Defendants' possession. *Guaranteed Constr. Co.*, 395 N.W.2d at 336. And though Montgomery insists that the outer-box statements warrant the "continued availability" of Starbucks T-Discs, (Am. Compl., R. 31, PID 250), we find no error by the district court in not reading that promise into the box-labeling. The district court thus properly dismissed her implied-warranty claim.

## C. Jurisdiction over the Class-Certification Appeal

Montgomery also appeals the district court order denying class certification of her consumer-protection claims. Defendants again claim that Montgomery's acceptance of the Rule 68 offer of judgment foreclosed her appeal of this issue, and this time we agree.

Again, "[g]enerally speaking, settlement of a plaintiff's claims moots an action," *Pettrey v. Enter. Title Agency Inc.*, 584 F.3d 701, 703 (6th Cir. 2009) (brackets omitted) (quoting *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993)), because the plaintiff no longer possesses "a personal stake—i.e., a legally cognizable interest—in the outcome of the litigation," *id.* In the class-action context, however, a plaintiff who prevails on her individual claims retains a personal stake in the outcome of a denial-of-class-certification appeal if she could potentially "shift[] the litigation costs to [her] fellow class members" upon obtaining class certification. *Id.* at 705; *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 336–37 (1980).

In *Roper*, the district court denied the plaintiffs' motion for class certification before the defendants made a Rule 68 offer of judgment that the plaintiffs refused. 445 U.S. at 329. The offer included legal costs but omitted attorney's fees. *Id.* Based on the offer, the district court

entered judgment in the plaintiffs' favor over their objections, and plaintiffs then appealed the denial of class certification. *Id.* at 330. The Supreme Court rejected the defendants' mootness argument because the plaintiffs maintained a personal stake in shifting the unawarded litigation costs to the putative class if class certification proved successful on appeal. *Id.* at 336. The Court also emphasized that "[a]t no time did the named plaintiffs accept the tender in settlement of the case." *Id.* at 332. Indeed, the Court in *United States Parole Commission v. Geraghty*—decided the same day as *Roper*—left open the question of "whether a named plaintiff who *settles* the individual claim after denial of class certification may, consistent with Art. III, appeal from the adverse ruling on class certification." 445 U.S. 388, 404 n.10 (1980) (emphasis added) (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393–94 & n.14 (1977)).[2]

After *Roper* and *Geraghty*, this court held in *Pettrey* that settlement of the plaintiffs' individual claims foreclosed their class-certification appeal. 584 F.3d at 703–07. The *Pettrey* procedural events mimicked this case's. Following the district court's denial of class certification, the *Pettrey* parties entered into a settlement agreement that obligated the defendants to pay plaintiffs' costs and attorney's fees. *Id.* at 703. The plaintiffs then appealed the denial of class certification. *Id.* We found the appeal moot, distinguishing *Roper* in two ways. First, no "live controversy" existed because the plaintiffs "voluntarily relinquished" their individual claims, whereas the *Roper* plaintiffs' claims were "involuntarily terminated" by the district court. *Id.* at 705. Second, the plaintiffs lacked "personal stakes" in the outcome of the appeal because the defendants, in the settlement, "agreed to pay all attorneys' fees and costs." *Id.* By contrast, the district court's judgment in *Roper* left the attorney's-fee issue undecided, preserving plaintiffs' appellate fee-shifting interest. *See Roper*, 445 U.S. at 329.[3]

---

[2]After *Roper*, the Supreme Court held that an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990) (citing *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986)). This appears to conflict with *Roper*'s holding. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1532 n.5 (2013) ("Because *Roper* is distinguishable on the facts, we need not consider its continuing validity in light of our subsequent decision in *Lewis* . . . ."). But because *Lewis* was not a class action and made no mention of *Roper*, we must continue to operate within *Roper*'s fee-shifting framework. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

[3]The Supreme Court recently rejected a mootness challenge in the context of an *unaccepted* Rule 68 offer of judgment because such an offer "is considered withdrawn" if not accepted within 14 days, providing plaintiff no relief and leaving his personal stake in the litigation unchanged. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663,

*Pettrey*, not *Roper*, controls here. Montgomery accepted Defendants' Rule 68 offer of judgment—which *included* costs and attorney's fees—thus eliminating any putative benefit from class certification. Certification of the class would not have the potential to leave Montgomery "in a better position with respect to attorneys' fees and costs than would the [Rule 68 offer she accepted]." *Pettrey*, 584 F.3d at 706.

Attempting to sidestep *Pettrey*, Montgomery points out that Defendants offered costs and fees she incurred in pursuing only her *individual* claims, whereas the *Pettrey* settlement provided costs and fees "incurred by the plaintiffs in pursuing both their individual and *class* claims." *Pettrey*, 584 F.3d at 705 (emphasis added). True, but Montgomery makes no argument that *she* owes her lawyer these unawarded, class-related attorney's fees. *See Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 827 (8th Cir. 2008) (holding the appeal moot because "[a]n additional award of fees from the defendants would accrue to the benefit of plaintiffs' counsel, to be sure, but nothing in the record demonstrates that an additional award would relieve any burden presently borne by the named plaintiffs themselves").

Last, Montgomery presses her express reservation of her right to appeal the denial of class certification. She also complains that Defendants have yet to pay the district court's judgment. *Pettrey*, as discussed above, answers this: Montgomery's acceptance of the Rule 68 offer extinguished her continuing personal interest and rendered her class-certification appeal moot. 584 F.3d at 706 & n.3.

**D.    Attorney's Fees**

Finally, Montgomery asks us to "reverse or vacate" the district court's award of attorney's fees and costs because the district court awarded only 3% of the amount requested. By positing only that the modest size of the award (as compared to the request) amounts to a "non-award," she presents the court with a gripe, unaccompanied by legal reasoning in support of judicial relief. We therefore agree with Defendants that Montgomery forfeited this issue by inadequately briefing it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)

---

671–72 (2016) (quoting Fed. R. Civ. P. 68(b)). Because Montgomery accepted the Rule 68 offer, *Campbell-Ewald* provides little instruction. Moreover, the Court declined to discuss whether the plaintiff's "claim for class relief prevent[ed] th[e] case from becoming moot." *See id.* at 679 n.1 (Roberts, C.J., dissenting).

("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995))). Accordingly, we affirm the fees aspect of this appeal.

## III.

We AFFIRM the district court's dismissal of Montgomery's claims for breach of express and implied warranties, DISMISS the class-certification appeal as moot, and AFFIRM the district court's award of attorney's fees.