**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0705n.06

Case No. 19-5965

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Dec 17, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE EASTERN DISTRICT OF |
| SALOMAN MARTINEZ, | ) KENTUCKY |
| | ) |
| Defendant-Appellant. | ) |

Before: SUTTON, BUSH, and MURPHY, Circuit Judges.

SUTTON, Circuit Judge. Saloman Martinez, a federal inmate at Big Sandy and a member of the Mexikanemi prison gang, allegedly stabbed a rival gang member with a shank. A jury convicted Martinez of assault with a dangerous weapon with intent to commit bodily harm. *See* 18 U.S.C. § 113(a)(3). Martinez appeals, arguing that the district court botched an evidentiary ruling and that the jury botched the guilt finding. We affirm.

I.

In the summer of 2018, two members of the Mexikanemi prison gang assaulted a rival Arizona Mexican Mafia gang member in a laundry room inside Big Sandy, a maximum-security federal penitentiary that is "not a place for choir boys." R.180 at 39. Another Arizona Mafia member witnessed the episode and tried to intervene. Two Mexikanemi gang members, Saloman Martinez and Eric Flores, were on the lookout for that possibility. They ambushed this other rival

gang member, and he ended up "covered in blood," the product of large, visible stab wounds. R.180 at 32. To halt the mayhem, a correctional officer sprayed the attackers with a chemical irritant.

Correctional officers set out to determine who stabbed whom. Someone identified Flores as one of the attackers. To identify the second assailant, four correctional officers reviewed video footage of the incident and, after doing so, agreed that it was Martinez.

A federal grand jury indicted Martinez and Flores for assaulting the victim with a dangerous weapon with intent to commit bodily harm. *See* 18 U.S.C. § 113(a)(3). The jury found them both guilty of the assault charge. The district court sentenced Martinez to 100 months and Flores to 110 months. This court recently resolved Flores's appeal. *United States v. Flores*, 974 F.3d 763 (6th Cir. 2020).

II.

*Evidentiary ruling*. Martinez challenges the admission of fact and opinion testimony by Lieutenant Johnson, a long-serving investigator at Big Sandy, on several grounds. He first disputes the relevance of Lieutenant Johnson's testimony about gang characteristics, who belonged to which gang, and Martinez's motive to commit the assault. Abuse-of-discretion review applies. *See United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015).

None occurred. Recall the core issue at trial: Who was the assailant? In view of that issue, Lieutenant Johnson permissibly testified that he knew Martinez, that he viewed the video of the assault, and that he recognized Martinez as the second assailant. To his credit, Martinez does not challenge the relevance of this testimony.

Martinez instead disputes the relevance of Lieutenant Johnson's testimony about the gangs at Big Sandy, how they operated, and how they handled rival gangs. But under the modest

relevance requirements of Rule 401 of the Federal Rules of Evidence, testimony about "gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case." *United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014). Any evidence tending to show that Martinez was one of the assailants passes this low bar. *See United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006). Lieutenant Johnson, for example, testified that he watched Martinez on video walk with the "general" of Mexikanemi soon after the attack. R.179 at 47, 49–50. It was common practice, he testified, for Mexikanemi members to escort their leader after a violent assault. That testimony made it more likely that Martinez was a member of the gang that committed the assaults, and more likely that he was the assailant.

The same goes for Lieutenant Johnson's testimony that Mexikanemi and Arizona Mafia gang members refused to be placed in the same cells. That explains why an attack on an Arizona Mafia member might come from a member of the Mexikanemi gang. Evidence about Martinez's motive was relevant too. The district court did not err in admitting Lieutenant Johnson's testimony about why the victim and the attacker's gang affiliations provided a potential motive for the assault. Although motive is not an element of 18 U.S.C. § 113(a)(3), that was not the point. The evidence supported the government's theory that Martinez committed the attack. Someone with a motive to hurt someone might be the person who hurt him.

Martinez adds that, even if Lieutenant Johnson's testimony passed the minimum relevance threshold, it was unduly prejudicial. A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Abuse-of-discretion review, again, applies. *See United States v. Ray*, 803 F.3d 244, 257 (6th Cir. 2015).

None, again, occurred. It is commonplace to admit evidence of this sort over a Rule 403 objection. For the reasons mentioned above, gang membership and gang characteristics often help show why an inmate would stab a rival gang member. *See Ford*, 761 F.3d at 649–50; *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999); *United States v. Archuleta*, 737 F.3d 1287, 1293–95 (10th Cir. 2013).

That is just what happened. Lieutenant Johnson linked Martinez's membership in Mexikanemi with the first attack, then explained how the gang's structure and characteristics influenced Martinez's conduct. The district court guarded against any undue prejudice by instructing the jury that it could consider the gang affiliation evidence "only as it relates to the government's assertions about that particular defendant's motive and identity regarding the incident at issue." R.180 at 236. On top of that, the court instructed the jury that it need not "accept this witness's opinion[]," and that it could decide how much weight to give Lieutenant Johnson's opinion testimony based on his "qualifications" and his chain of reasoning. R.179 at 64.

Martinez also argues that Lieutenant Johnson's expert testimony should have been excluded under Evidence Rule 702 because it turned on inadmissible hearsay, violated the Confrontation Clause, and lacked a foundation. Having failed to raise these challenges in the district court, he must overcome the strictures of plain-error review. He must show (1) an error (2) that was self-evident, (3) that affected the outcome of the trial, and (4) that seriously undermined the fairness of the trial and the integrity of the judicial system. *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019).

As a general and initial matter, no error occurred with respect to most of these objections because Lieutenant Johnson primarily testified as a fact witness. As someone who knew Martinez,

knew the prison, knew who belonged to which gang, and as someone who watched the videotape, Lieutenant Johnson was free to testify about what he saw and knew—and Martinez was free to cross-examine him at each step along the way.

Even on their own terms, these objections fall short. No error occurred with respect to the hearsay. As the district court aptly put it, the Lieutenant's "familiarity with MEXIKANEMI" formed "a foundational element of his proposed testimony." R.69 at 3 n.3. That foundation was based on firsthand information about the gang from working at Big Sandy, not hearsay. But even to the extent hearsay creeped into the mix, experts may use hearsay to form the basis of their testimony. Fed. R. Evid. 703; *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994).

The Confrontation Clause claim succumbs to similar responses. Most of Lieutenant Johnson's testimony, expert or otherwise, turned on firsthand observations from a 19-year career. At any rate, the Confrontation Clause applies only to "testimonial" evidence. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). To meet that condition, the evidence must have been designed to "bear testimony" against the accused. *Id.* at 51 (quotation omitted). Lieutenant Johnson relied on the videotape of the incident and his knowledge of the Big Sandy gangs for nearly all of his testimony. No evidence shows, and Martinez does not supply any, that the Lieutenant relied on testimonial evidence from anyone. *See United States v. Warman*, 578 F.3d 320, 346 (6th Cir. 2009). But even if that were not the case, experts may rely on testimonial evidence in forming an independent opinion that may be tested through cross-examination. *See United States v. Rios*, 830 F.3d 403, 418 (6th Cir. 2016); *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009); *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014); *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012).

As for Martinez's claim that Lieutenant Johnson's expert testimony lacked an evidentiary foundation, *see* Fed. R. Evid. 702, that falls short as well. Most of the testimony Lieutenant Johnson offered related to facts he observed, not expert opinions he developed. No error occurred anyway, even if it's fair to say that some of his statements amounted to expert testimony. Lieutenant Johnson based his testimony on his lengthy experience tracking gangs and their habits at Big Sandy. He maintained "daily contact" with Martinez as well as other members of gangs. R.179 at 33. There is nothing wrong with "a gang expert's testimony" if he premises it "on significant experience with the gang about which the expert is testifying." *United States v. Ledbetter*, 929 F.3d 338, 349 (6th Cir. 2019) (quotation omitted). That's what Lieutenant Johnson did.

*United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013), is not to the contrary. It ruled that an agent called to testify about his "personal impressions" of "recorded conversations" did not base his testimony on firsthand knowledge because he failed to identify "*personal* experiences that led him to obtain his information." *Id.* at 594, 596. In that case, unlike this one, the government conceded that the officer's testimony "lacked the [firsthand] knowledge required to lay a sufficient foundation for his testimony." *Id.* at 597. Lieutenant Johnson grounded his gang-related testimony in personal knowledge gathered over a 19-year career. *See Kilpatrick*, 798 F.3d at 381.

As for Martinez's cursory claim that the district court should have excluded the Lieutenant's testimony under Evidence Rule 701, he forfeited the claim by failing to brief the issue in any detail in his opening brief. *See Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 312 (6th Cir. 2016). He never explains how the district court circumvented Rule 701 in his opening brief, and a reply brief is not the place to fill that gap. Martinez, like all appellants, "abandons all

issues not raised and argued in [his] initial brief on appeal." *Bard v. Brown Cnty.*, 970 F.3d 738, 751 (6th Cir. 2020) (quotation omitted).

Martinez separately complains that Lieutenant Johnson improperly gave dual fact and opinion testimony. But an officer may testify as a fact and opinion witness as long as the court cautions the jury about the two-headed nature of the witness's testimony. *Rios*, 830 F.3d at 414–15. The court did just that.

*Sufficiency of the Evidence*. Martinez claims that insufficient evidence supports the conviction. That requires us to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Martinez does not carry this "heavy burden." *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007) (quotation omitted). Four correctional officers testified that Martinez stabbed the victim. Each officer reviewed the surveillance footage, and each officer identified Martinez as one of the two assailants. The correctional officer who sprayed Martinez with the chemical irritant testified that, "if you watch the video, you [can] see when I sprayed him [with pepper spray]," and then you can watch him "wipe[] . . . off his face and then go[] [back] to his [assigned] cell." R.179 at 138. Another officer testified that, after reviewing the footage, he had "no doubt" that Martinez attacked the victim. R.180 at 85. The United States also introduced evidence documenting the cellblock's layout and the location of Martinez's assigned cell. And it tendered the surveillance video to the jury, which had a chance to watch the video for itself. It is true that no officers saw Martinez as he was about to stab the victim. Would that they had; they might have stopped the attack. But the jury had plenty of reliable evidence to find that Martinez committed the assault.

We affirm.